UNITED STATES of America,
Plaintiff-Appellee,

v.

Lamont FLOYD and Peter Olivo,
Defendants-Appellants.

Nos. 666, 667, Dockets 76–1462, 76–1463.

United States Court of Appeals,
Second Circuit.

Argued Jan. 19, 1977.

Decided May 16, 1977.

Jonathan M. Marks, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., Alvin A. Schall, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Peter J. Fabricant, Brooklyn, N. Y., Paul E. Warburgh, Jr., Huntington, N. Y., for appellant Floyd.

Thomas J. O'Brien, New York City, for appellant Olivo.

Before LUMBARD and FEINBERG, Circuit Judges, and COFFRIN, District Judge.*

COFFRIN, District Judge:

Lamont Floyd and Peter Olivo appeal from judgments of conviction in the United States District Court for the Eastern District of New York after a five day jury trial before the Honorable George C. Pratt, *District Judge*. They were convicted of the armed robbery of the Chase Manhattan Bank on Rutland Road in Brooklyn, New York, on October 31, 1975, in violation of 18 U.S.C. §§ 2113(a), (d), and 2.[1] Appellant Floyd challenges the admission of certain testimony as hearsay. Both appellants claim prejudicial error due to Judge Pratt's charge on credibility and the prosecutor's summation concerning the availability of witnesses. In addition, both claim error in the admission of the testimony of one witness after the Government's alleged failure to comply with Rule 12.1(b) of the Federal Rules of Criminal Procedure. We affirm.

*I*

The evidence at trial indicates that on October 31, 1975, at approximately 10:25 a. m. the Chase Manhattan Bank on Rutland Road in Brooklyn, was robbed by three armed men[2] wearing Halloween masks. The bank's records showed that $8,591.00 had been stolen. Because the men wore masks, there was no positive identification of the robbers. The bank guard was able to describe the perpetrators generally but was unable to specifically identify the appellants. Photographs taken by a security camera were introduced into evidence. One of the pictures showed a portion of the side of one robber's face. Through a courtroom demonstration the jury was afforded an opportunity to compare the appearance of the person in that picture with appellant Floyd.

The Government's principal witness was Xavier King, who was involved in the bank robbery as the driver of the getaway car. According to the testimony of King, the robbery was planned during the early morning hours of October 31, 1975 at an apartment on Saratoga Avenue in Brooklyn. King testified in detail as to the participants, their roles in the crime, the weapons used and the particulars of the robbery, its planning and aftermath. King's testimony indicated that Beverly Boston, Olivo's girlfriend, was present in the apartment on the morning of the robbery, and that when King and the others returned to the apartment after the robbery, Suqulia Vantessa "Van" Manning (Floyd's girlfriend), "Debbie", Barry "Tuba" McDaniels and "Little Mike" were there.

The Government also called James Duffin as a witness. Duffin testified that on the morning after the robbery Olivo asked him to take a walk. In the course of the walk Duffin agreed to help Olivo set fire to the getaway car, which had been parked on the street behind the Saratoga Avenue apartment building in which the robbers had headquartered their criminal activities. Duffin testified that a man standing on the stoop of a nearby building witnessed the arson of the automobile. The testimony further indicated that Olivo told Duffin that he, Floyd and others had robbed a bank.[3]

---

* Honorable Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

1. Floyd was sentenced to 15 years imprisonment. Olivo was sentenced to 10 years imprisonment as a youth offender, pursuant to 18 U.S.C. § 5010(c).

2. The evidence indicates that four men were actually involved in the robbery. Xavier King drove the getaway car, and testified for the Government after having pleaded guilty to a violation of 18 U.S.C. § 2113(c). The robbery was executed by appellants and one Edwin Almestica, who pleaded guilty to a violation of 18 U.S.C. § 2113(a) in connection with another robbery. The plea was also in satisfaction of all charges against Almestica stemming from the October 31 robbery. He was sentenced to 18 years imprisonment. *See United States v. Almestica*, 546 F.2d 524 (2d Cir. 1976).

3. Duffin's direct examination on this point follows:

    Q. Did he say where he wanted to go?

Olivo and Floyd each presented alibi defenses, claiming to have been at places other than the bank at the time of the robbery. Evidence of their respective defenses was presented through the testimony of the appellants and through the testimony of their girlfriends.

## II

■ We first consider the Government's summation and Judge Pratt's charge to the jury. With respect to the charge, appellants contend that the jury was not sufficiently cautioned as to the unreliability of accomplice testimony, and that the jury should not have been particularly instructed with regard to the credibility of the defendants' testimony. We find that Judge Pratt's charge was adequate both with respect to accomplice testimony, *United States v. Dioguardi*, 492 F.2d 70, 82 (2d Cir.), *cert. denied*, 419 U.S. 829, 95 S.Ct. 49, 42 L.Ed.2d 53 (1974); *United States v. Projansky*, 465 F.2d 123, 136 n. 25 (2d Cir.), *cert. denied*, 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972);

> A. No, just we was walking, walking toward Key Food, and he [Olivo] told me he robbed a bank.
> Q. Did he say who he had robbed the bank with?
> A. Yes, with Lamont, him and some other people I don't know who they were.
> Trial Tr. at 293.

**4.** The charge as to defendants' credibility was as follows:

> The law never imposes upon a defendant in a criminal case the burden or duty of producing any evidence.
> A defendant cannot be compelled to take the stand and testify. Whether or not he testifies is a matter of his own choosing. If he does choose to testify, and the defendant Floyd and the defendant Olivo each did in this case, he is a competent witness. In that event he is subject to cross-examination, as you have observed, and his credibility is for you, as the jury, to determine, in the same manner as other witnesses.
> You may consider that a defendant has a strong motive to lie to protect himself, but you may also consider that he takes a real risk in subjecting himself to cross-examination and you must decide whether to believe him or how much to believe.

We find Judge Pratt's language to be adequate in this case. However, language more nearly akin to that approved in *United States v. Martin*, 525 F.2d 703, 706 n. 3 (2d Cir. 1975), is

*United States v. Falange*, 426 F.2d 930, 933 (2d Cir.), *cert. denied*, 400 U.S. 906, 91 S.Ct. 149, 27 L.Ed.2d 144 (1970), and the defendants' testimony,[4] *United States v. Martin*, 525 F.2d 703, 706 (2d Cir.), *cert. denied*, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975); *United States v. Sullivan*, 329 F.2d 755, 756–57 (2d Cir.), *cert. denied*, 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964).

■ The appellants also argue that the Government's rebuttal summation, which referred to defendants' power to subpoena witnesses, deprived them of their right to rely on the Government's failure of proof. When considered in light of the charge, the prosecutor's remarks, which were in response to defense summations referring to the failure of the Government to produce certain witnesses,[5] did not deny the defendants their right to rest upon the prosecution's burden of proof. *United States v. Crisona*, 416 F.2d 107, 118 (2d Cir. 1969), *cert. denied*, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253 (1970).[6]

preferable because it explicitly states that a defendant's vital interest in the outcome of his trial is not inconsistent with the ability to render truthful testimony.

**5.** Olivo's counsel referred specifically to the absence of potential witnesses such as those who were present in the headquarters apartment after the robbery, the man who witnessed the arson of the automobile, and persons who might have seen the getaway car leave the bank. Floyd's counsel merely argued generally with respect to the Government's burden of proof and the presumption of innocence.

**6.** We are not persuaded by the appellants' contention that the potential witnesses were available to the Government, but not to the defense. Suqulia Manning, Floyd's girlfriend, testified that she was acquainted with the persons other than Floyd, Olivo and King who were said to have been present in the headquarters apartment at the time when the robbery receipts were divided. She used only first names or "street names," but logic dictates that both King and Manning were referring to at least two of the same individuals whose names were "Tuba" and "Little Mike." At the latest, these individuals were known and available to the appellants after King's testimony on the second day of trial. As Judge Pratt noted, no request was then made for a continuance or other remedial measure to allow the defense to secure the testimony of these individuals.

### III

■ Although we find appellants' argument for the total exclusion of the Duffin testimony [7] to be meritless, we nonetheless find that Duffin's testimony does raise a question of some consequence. Duffin testified that Olivo admitted that he, Floyd and others had committed the bank robbery.[8] We conclude that the admission of such testimony without, at least, a limiting instruction was error as to Floyd in that it was hearsay.

The Government argues that the statement is admissible against Floyd because it was made by a co-conspirator during the course of and in furtherance of a conspiracy.[9] Alternatively, the Government, citing *Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), contends that Floyd was not prejudiced by the admission of the statement because Olivo testified and could have been examined as to his alleged admission. We do not agree with either of the Government's contentions.

■ The established rule is that once "the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment." *Grunewald v. United States*, 353 U.S. 391, 401–02, 77 S.Ct. 963, 972, 1 L.Ed.2d 931 (1957); *accord Wong Sun v. United States*, 371 U.S. 471, 490, 83 S.Ct.

407, 9 L.Ed.2d 441 (1963); *Lutwak v. United States*, 344 U.S. 604, 618–19, 73 S.Ct. 481, 97 L.Ed. 593 (1953); *Krulewitch v. United States*, 336 U.S. 440, 443–44, 69 S.Ct. 716, 93 L.Ed. 790 (1949). To rule otherwise "would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators." *Grunewald, supra*, 353 U.S. at 402, 77 S.Ct. at 972. *Krulewitch, Grunewald* and related cases create a barrier at the end of a conspiracy [10] that we do not think should be breached to permit the inclusion of an event on the other side, no matter how proximate it may be to the conspiracy in time and place.[11] To include in the conspiracy an event, no matter how proximately related, occurring after the main objectives of a conspiracy have been accomplished would unnecessarily blur the relatively clear line drawn by the Supreme Court's decisions on this subject. Although it is a close question, we find Olivo's arson of the getaway car to be outside the bounds of the conspiracy, and thus any statement made by Olivo in conjunction with that event would not be admissible against Floyd.

In this regard we also think the Government's reliance on *Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), is misplaced. *Nelson* held that where a codefendant is available for cross-examination it does not violate the confrontation clause to admit out-of-court state-

---

7. We do not agree with appellants' claim that, under Rule 12.1(d) of the Federal Rules of Criminal Procedure, Duffin's testimony must be excluded because his name should have been supplied to the defense as an alibi rebuttal witness, pursuant to Rule 12.1(b). Duffin's name and anticipated testimony were made known to the defense on the first morning of trial. The defendants were not prejudiced by any previous lack of notice, if indeed it was required.

8. *See* note 3 *supra*.

9. Fed.R.Evid. 801(d)(2)(E). The argument, factually, is that the act of burning the getaway car by Olivo on the day after the robbery was an integral part of the conspiracy to rob the bank. Thus, statements made by Olivo during

the act would not run afoul of the hearsay rule as to co-conspirators and would be admissible against Floyd.

10. In this case the conspiracy ended upon the return to the headquarters apartment after the robbery. The object of the conspiracy, the dividing of the loot among the conspirators and the corresponding assumption of control of shares of it by the individual participants, occurred there and then.

11. The event to which we refer in this case, the arson of the getaway car, occurred approximately 24 hours after the conspiracy had ended and on the same city block in which the robbers' apartment headquarters was located.

ments of the codefendant that implicate the other defendant. The Court did not hold that the hearsay problem was eliminated by the opportunity for cross-examination. It did not disturb the traditional distinction between the confrontation clause and the hearsay rule. *See Dutton v. Evans*, 400 U.S. 74, 82, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). There is no indication that any such blanket exception to the hearsay rule exists where the co-conspirator hearsay declarant is available for cross-examination. It was error to admit Duffin's statement as evidence against Floyd.

We sustain Floyd's conviction, nonetheless, because we hold the admission of the hearsay statement to be harmless error. Fed.R.Crim.P. 52(a). We agree with Judge Pratt: "[I]n the overall context of issues presented by this case, what was said to Duffin or what was said by Duffin on the witness stand takes on a relatively small part of the picture as compared to what was said by Mr. King." The testimony quoted in the margin[12] was virtually the substance of Duffin's testimony. In contrast, King's testimony abounded in detail and was subjected to rigorous cross-examination. Many of the details of King's testimony were corroborated by other testimony, pictures, and physical evidence. Further, it scarcely need be noted that the jury, not this Court, was in a position to weigh the testimony and assess the credibility of the key witnesses: Floyd, Olivo, King, Suqulia Manning and Beverly Boston. In view of the limited nature of Duffin's testimony, it could have had only the most marginal effect, if any, on the critical issue of credibility. Finally, the jury was afforded an opportunity to compare appellant Floyd's appearance with a bank photograph showing a portion of the side of a man's face.[13] When compared to the other evidence against Floyd, we do not think that the admission of Duffin's hearsay statement assumes such significance as to require reversal.[14]

Affirmed.

LUMBARD, Circuit Judge (concurring and dissenting):

While I concur in the affirmance of the convictions, I do not agree that it was error as to Floyd to admit Duffin's testimony of Olivo's statements to him the morning of November 1, 1975 when Olivo persuaded him to assist in the burning of the getaway car.

King testified that sometime after midnight on October 31, 1975 he was summoned to an apartment at 843 Saratoga Avenue, Brooklyn. Upon his arrival, King found Floyd, Olivo, and Almestica at the apartment. Floyd asked King to find a car for a bank robbery and to drive him and the others to the bank. Thereafter, King stole a blue Ford LTD and drove it back to the Saratoga Avenue apartment. King drove the Ford during the robbery, which took place that same day; after the holdup, King parked the car on Strauss Street, directly behind the Saratoga Avenue apartment.

Duffin testified that on the morning of November 1, 1975, approximately 24 hours after the robbery, he met Olivo who asked him to take a walk. Olivo and Duffin went to a gas station where Olivo bought 65¢ worth of gasoline. Olivo then told Duffin that he, Floyd, and some others had robbed a bank and that he wanted to burn the car used in the robbery. After Duffin agreed

12. *See* note 3 *supra*.

13. The Government, of course, contends that the man in the photograph is Floyd. The comparison was accomplished by Floyd's assuming a pose similar to that of the man in the photograph in a position approximately 6 to 8 feet from the jury box.

14. We are well aware of the fact that the jury claimed to be deadlocked several times, and that they reached a verdict only after having

been given a modified *Allen* charge, *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). We do not think this unusual in a case that so much hinged on the assessment of the credibility of witnesses whose testimony was directly contradictory. Nor, as the textual discussion indicates, do we think that Duffin's testimony was so great a weight in the balance of credibility that its admission would rise to prejudicial error.

to help, the two went to Strauss Street, where King had parked the car; Olivo doused the car with gasoline and set it on fire. On November 3, 1975 the FBI discovered the burned hulk of the car.

As the majority points out, the declarations of a co-conspirator may be used against a defendant only when made in furtherance of a conspiracy. Since there can be no furtherance of a conspiracy that has ended, the crucial question is whether the statements at issue were made after the "central criminal purposes" of the conspiracy had been achieved. *Grunewald v. United States*, 353 U.S. 391, 401–02, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). See *Lutwak v. United States*, 344 U.S. 604, 617–18, 73 S.Ct. 481, 97 L.Ed. 593 (1953). However, unlike *Grunewald*, the government here is not attempting to evade the statute of limitations by charging a subsidiary conspiracy to conceal based upon statements made long after the central aims of the conspiracy had been achieved. The statements here were not made weeks, see, e. g., *Krulewitch v. United States*, 336 U.S. 440, 442, 69 S.Ct. 716, 93 L.Ed. 790 (1949), or years, see, e. g., *Fiswick v. United States*, 329 U.S. 211, 217, 67 S.Ct. 224, 91 L.Ed. 196 (1946), after the conspiracy had terminated; nor do the statements here involve admissions made to the police after a co-conspirator's arrest. See, e. g., *Wong Sun v. United States*, 371 U.S. 471, 490, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In my view, the close relation of what Olivo and Duffin did to the robbery itself and the short elapse of time from the robbery to the burning of the car distinguish this case from all the cases cited to support Floyd's claims of error and Olivo's statement implicating Floyd was properly received as a statement made during the course of the conspiracy in order to carry out its purposes.

Floyd specifically requested King to obtain a car to be used in the robbery. It must have been obvious to Floyd at the time of the robbery, if not at the time of his request, that the stolen getaway car would have to be disposed of before the getaway would be complete. We do not deal here with a small object that may conveniently be disposed of at some later date, or with a furtive cover-up made a significant time after the crime was completed. See, e. g., *Grunewald v. United States*, supra, 353 U.S. at 403, 77 S.Ct. 963. The abandonment and destruction of the getaway car was an integral part of the conspiracy, just as much a part of the plan as was the stealing of the car; indeed, it is almost standard operating procedure in a bank robbery for the culprits to surreptitiously obtain a getaway car before the robbery and quickly dispose of it afterwards. See, e. g., *United States v. Stallworth*, 543 F.2d 1038, 1039 (2d Cir. 1976); *United States v. Coughlin*, 514 F.2d 904, 905 (2d Cir. 1975); *United States v. Stewart*, 513 F.2d 957, 958–59 (2d Cir. 1975); *United States v. Brown*, 511 F.2d 920, 924–25 (2d Cir. 1975); *United States v. Harris*, 494 F.2d 1273, 1274 (8th Cir.), cert. denied, 419 U.S. 993, 95 S.Ct. 303, 42 L.Ed.2d 265 (1974); *United States v. Chrisco*, 493 F.2d 232, 239 (8th Cir.), cert. denied, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974). It was just as important to leave no trace of the getaway car, particularly when it had been abandoned so near to the final rendezvous, as it was to steal the car and use it in the robbery; both the appropriation of the car and its destruction had to be done within a few hours of the robbery. The burning of the car occurred within 24 hours of the robbery and the entire period of time from the theft of the car until its burning was encompassed in less than 36 hours. What Olivo said to Duffin was said in order to get Duffin's help in burning the car. Thus, in my view, the return of the bandits to their hideout and the division of the loot was not the end of the conspiracy. See note 10, supra.

Finally, I do not agree that the admission of Olivo's statements, if error, was harmless error. The critical issue in this case was the identity of the bank robbers. Aside from the testimony of King, who was awaiting sentencing on his plea of guilty to bank robbery charges at the time of his testimony, there was virtually no positive identification evidence. The bandits wore masks during the robbery and the bank

surveillance photograph, which was used to identify Floyd, showed only a portion of the side of a man's face. The defendants took the stand and each presented an alibi defense. During the course of its deliberations, the jury sent out at least two notes informing the court that it was deadlocked and a verdict was reached only after the court had given a modified *Allen* charge. As the majority points out, the jury's verdict turned on its assessment of the witnesses' credibility. While Duffin's appearance may have been brief, his testimony regarding Olivo's statements was evidence of the most damning sort—a direct admission of guilt implicating Floyd. This admission by a co-defendant was the strongest evidence corroborating King's testimony. Accordingly, I cannot agree that the admission of Olivo's statements, if inadmissible hearsay, was harmless error.