UNITED STATES of America, Plaintiff-Appellee,

v.

Cary Glenn BLALOCK and Michael Eugene Fiedler, Defendants-Appellants.

No. 76–2412.

United States Court of Appeals, Fifth Circuit.

Dec. 22, 1977.

H. Gene Burkett, Atlanta, Ga. (Court-appointed), for Blalock, defendant-appellant.

Eugene A. Medori, Jr., Decatur, Ga., for Fiedler, defendant-appellant.

William L. Harper, U. S. Atty., Jeffrey B. Bogart, Sherman D. Johnson, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

**1182**

Before JONES, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

Appellants were convicted on a conspiracy count and two substantive counts of importation and possession of cocaine. Blalock and an informer went to Ecuador and arranged for the shipment of cocaine to the United States in hollowed out logs which were crated as purported samples of wood to be considered for use in making railroad crossties. The crate was shipped by air to Atlanta, consigned to a corporation managed by the informer. A controlled delivery was made.

Blalock and the informer met at an Atlanta restaurant with Fiedler, and arrangements were made for Fiedler to pick up the shipment at the Atlanta airport and for Blalock to go along in another car as a lookout and decoy. Fiedler made the pickup, and surveilling agents followed him and Blalock as they proceeded in separate cars. Fiedler stopped at a service station, ostensibly for gas, and Blalock stopped in an adjacent parking area. One agent arrested Fiedler at the service station and another arrested Blalock in the parking area.

### I. *Fiedler*

Fiedler's major argument is that at trial the government improperly commented on his silence after arrest. When Fiedler was arrested the agent gave him a *Miranda* warning, then asked him if he knew Blalock, who was then nearby in the adjoining parking area. Fiedler remained silent. Thereafter, in Fiedler's presence, Blalock was asked if he knew Fiedler. Blalock denied knowing him. Although he knew Blalock's denial was false, Fiedler remained silent. These incidents were brought out by the prosecution in cross-examination of Fiedler. This was not error. On direct Fiedler had attempted to make affirmative capital of the fact that although he had initially been silent he had later cooperated and given a full statement. This defense tactic entitled the government to explore the initial silence by cross-examination. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) is not to the contrary.

There was no error in its being revealed that Fiedler remained silent at his preliminary hearing. The government asked no questions concerning this, but rather Fiedler's counsel, anticipating that such a question might come, made an objection in the course of which he volunteered that at his advice Fiedler remained silent at preliminary hearing.

The court did not err in denying Fiedler's motion, on constitutional grounds, to dismiss for failure to grant a speedy trial. Under the four-part test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), there was no pretrial incarceration, and Fiedler suffered no substantial prejudice. His only claim of prejudice relates to his inability to refute evidence concerning a telephone call which the jury could infer was made to him from Ecuador, tending to implicate him in the arrangements. There was testimony that at the restaurant meeting just before Fiedler picked up the crate Fiedler stated that he had already made arrangements to distribute two-thirds of the cocaine. In view of this testimony plainly implicating Fiedler, the phone call was peripheral.

Fiedler's other points—failure to sever, limitation of cross-examination of the informer, sufficiency of the evidence, and comments made in closing arguments—are all without merit and require no discussion.

### II. *Blalock*

The government got before the jury by a series of questions, though none were specifically answered, the implication that a third person whose automobile Blalock was driving was, at time of trial, in jail on an unrelated narcotics violation. The government cannot be proud of this guilt-by-association trial tactic. The prosecutor attempted to justify this to the trial court

with the argument that he was entitled to show what kind of people Blalock associated with. This theory was frivolous. On appeal the government argues only harmless error. We are forced to agree that in the light of the overwhelming evidence of Blalock's guilt, this tangential matter was harmless error beyond reasonable doubt, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The denial of Blalock's speedy trial motion was not error, for the same reasons set out above as to Fiedler. Blalock's argument that he established entrapment as a matter of law is groundless. There was substantial evidence of Blalock's being the primary moving force in the entire transaction. Blalock made the first approach to the informer, who was engaged in trying to develop a business in selling crossties made from South American wood.

The convictions of Fiedler and Blalock are AFFIRMED subject to consideration by the district court of motions for new trial by both appellants on the grounds of newly discovered evidence. While this case was on appeal the government discovered in its files information which it concludes should have been furnished to defendants under the Jencks Act but was not furnished. We retain jurisdiction of the appeal but remand for the limited purpose of the defendants' promptly filing motions for new trial, if they desire, on the basis of this new evidence. If such motions are filed the rulings of the district court thereon shall be certified to this court as a part of this appeal.