UNITED STATES of America, Appellee,

v.

Edgar F. X. SHIELDS, Appellant.

No. 77–1816.

United States Court of Appeals,
Ninth Circuit.

March 9, 1978.

---

Michael J. Hemovich (argued), Spokane, Wash., for appellant.

Carroll D. Gray, Asst. U. S. Atty. (argued), Spokane, Wash., for appellee.

Before MERRILL and ELY, Circuit Judges, and ORRICK,* District Judge.

ELY, Circuit Judge:

At a jury trial appellant Shields was convicted of three counts of willful evasion of income taxes for the years 1971 through 1973. To prove its case, the Government introduced analyses of appellant's bank deposits and withdrawals. The evidence reflected large deposits that could not be attributable to appellant's reported income. In an effort to explain these deposits, appellant raised the "cash hoard" defense. Appellant's accountant and business associate, one Brickert, testified that appellant had a cash hoard of approximately $33,000, part of which appellant stashed in his car, part at his home, and part at his nightclub. Supposedly, appellant's cash hoard diminished during the prosecution years of 1971–1973 as appellant made periodic bank deposits from that reserve. Brickert also testified that appellant received two loan repayments totalling $9000 during the years in question, which would constitute another nontaxable source of funds. We affirm.

I.

Prior to trial, on June 19, 1975, the Internal Revenue Service (IRS) held a conference, attended by appellant, Brickert, and appellant's attorney, Randall, to discuss appellant's tax liability. An IRS representative, Bouker, confronted appellant with his alleged tax deficiency and stated that the purpose of the conference was to permit "anyone to say anything" on behalf of the appellant. Bouker specifically asked if appellant had nontaxable sources of funds that would explain his unaccounted for bank deposits. At the conference Brickert mentioned only the two loan repayments.

At trial the prosecutor impeached Brickert by eliciting that Brickert had said nothing about a cash hoard at the IRS conference. He argued that Brickert's silence was inconsistent with his testimony that he had personally observed appellant's cash hoard. To augment this line of attack, Bouker later testified that Brickert had not referred to the cash hoard at the conference. The prosecutor then asked Bouker whether Randall, appellant's attorney, had revealed any nontaxable sources of funds at the conference. Appellant objected, the

* Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

District Court sustained the objection, and the jury never heard an answer. Finally, in the closing argument the prosecutor broadly referred to the failure to raise the cash hoard defense at the conference:

> The defense which is raised here, and the one that where the evidence is produced for the first time in court, never occurred outside of the court before, before we started on the Tuesday a week ago, the government was never offered these explanations which—
>
> [Shields' counsel]: If Your Honor please, at this time, I would like to move for a mistrial on the basis of . . . that statement . . . . .
>
> [Prosecutor]: I'm getting right into the matter of Brickert, what Brickert said, and Brickert's testimony on the stand.

> .    .    .    .    .

> [Prosecutor]: I am not commenting on the defendant's failure to say anything.
>
> THE COURT: Well, I think it was too general of a statement.

> .    .    .    .    .

> THE COURT: Well, I'm going to admonish the jury, but I'm not going to grant the motion for a mistrial. . . . Members of the jury, I want to call your attention to one of the instructions I just gave you, that the defendant on trial has no obligation to say anything, and anything he does say, or any silence is not to be used against him, . . . . .

■ The silence of an accused at the time of arrest may not be used to impeach a defense subsequently offered at trial. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Fowle v. United States*, 410 F.2d 48

(9th Cir. 1969). The prohibition of such impeachment stems from the privilege against self-incrimination and from the representation implicit in the *Miranda*[1] warnings that a defendant will not be penalized for his decision to remain silent.

■■ Despite the urgings of appellant, we find the above rule inapplicable. Appellant claims that the cross-examination of Brickert, Bouker's testimony concerning Brickert's silence at the IRS conference, and the prosecutor's closing argument reflected upon appellant, implying to the jury that appellant also had failed to mention his cash hoard at the IRS conference.[2] Appellant concedes, as he must, that he was not cross-examined concerning his silence and that no direct evidence was introduced concerning his silence. For this reason the rule against impeaching an accused by his prior silence does not apply, and we elect not to extend the rule to situations such as the present one in which the silence of nondefendant witnesses might conceivably suggest that the explanation of a defendant is a recent fabrication.

■ Rather, Fed.R.Evid. 403 contains the correct standard for determining whether evidence, though relevant and not directly concerning the silence of an accused, is nonetheless inadmissible because it circumstantially tends to suggest his silence. Rule 403 grants discretion to the District Court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . . ." Twice the District Court instructed the jury that appellant had the right to remain silent and that his silence could not be used against

---

1. *Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. We reject the Government's argument that this issue was not preserved for appeal. It is true that appellant did not object to the cross-examination of Brickert on the basis that his silence reflected upon appellant; he only objected on the ground that the questions were argumentative. Appellant, however, objected and moved for a mistrial during Bouker's testimony concerning Brickert's silence and during

the prosecutor's reference during closing argument to the newness of the cash hoard defense. In light of the latter objections, appellant fully preserved his right to challenge on appeal all the alleged indirect references to appellant's silence. *See United States v. Semensohn*, 421 F.2d 1206, 1210 (2d Cir. 1970) (objection made on an incorrect ground preserved appeal because trial judge's attention was later focused on the proper reason for objection).

him. Clearly this minimized the possibility that the jury improperly considered whether appellant was silent at the IRS conference. Thus, the District Court did not err in refusing to exercise its discretion under rule 403 to exclude the evidence of Brickert's silence.[3]

■ Appellant also maintains that Brickert's impeachment, apart from its reflection 'on appellant, was improper because Brickert's silence was "ambiguous." The argument that Brickert's silence in and of itself lacked probative value was not presented to the District Court, and consequently we decline to consider it now. *See Gollaher v. United States*, 419 F.2d 520, 523 (9th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969).

## II.

Pursuant to the routine practice of governmental agencies, officials destroyed the rough notes of interviews with four prospective witnesses. It is not clear whether IRS agent Bouker made any notes at the conference with appellant, Randall, and Brickert. All the interviews in question occurred during 1974 and 1975, and the notes were not verbatim transcripts of witnesses' statements. The government officials prepared typed memoranda of the interviews, which were disclosed to appellant.

■ Appellant insists that the destruction of the notes violated the Jencks Act, 18 U.S.C. § 3500 (1970), and the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), we held that rough interview notes constitute potentially discoverable material and there-

fore must be preserved. Our court, however, has continually refused to apply the *Harris* rule retroactively in the absence of a specific demonstration that the destruction of notes resulted in prejudice. *United States v. Wood*, 550 F.2d 435, 440 (9th Cir. 1976); *United States v. Parker*, 549 F.2d 1217, 1224 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977); *United States v. Robinson*, 546 F.2d 309, 312 (9th Cir. 1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977). Appellant does not contend that the interview memoranda are incomplete or inaccurate and does not otherwise specify any prejudice to his defense resulting from the destruction of the rough notes. Accordingly, we conclude the appellant's contention in this respect must be rejected.

## III.

Another issue presented here is whether the Government improperly used an Idaho grand jury to obtain the testimony of one of appellant's witnesses, a man named Popp.[4] A memorandum from IRS agent Bouker, dated September 8, 1975, stated:

> During the course of the investigation it became necessary to use the grand jury proceedings to elicit testimony from reluctant witnesses. No prior judicial approval required under Rule 6(e) was obtained; however, the testimony was not relevant as regards the revenue agent's computation of gross or taxable income.

■ Appellant makes four related arguments concerning misuse of the grand jury. First, he claims that Bouker's memorandum concedes a violation of Fed.R.Crim.P. 6(e).[5]

---

**3.** For the purposes of this decision, we have assumed, as did the District Court, the impropriety of a direct reference to appellant's silence at the IRS conference. This issue is not directly presented, and we express no view as to its merits. *Doyle, Hale,* and *Fowle* all involved the impeaching use of the *postarrest* silence of an accused. The IRS conferences, however, occurred during the preindictment stage. The evidentiary use of such silence would not present a *Miranda* problem and

might not be so inherently lacking of probative value so as to justify a per se rule.

**4.** It was the grand jury for the Eastern District of Washington that issued the indictment upon which appellant was convicted.

**5.** Fed.R.Crim.P. 6(e) provides:

> Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the

Second, he asserts that the IRS wrongfully used the Idaho grand jury to collect evidence and did not submit evidence to that grand jury for the purpose of obtaining its indictment. Third, he asserts that at the time of Popp's testimony before the Idaho grand jury the IRS had not yet recommended criminal sanctions against appellant, and, therefore, the IRS was using the grand jury for the purpose of establishing appellant's civil tax liability.[6] Last, appellant maintains that the Government's impeachment of Popp with the transcript of the proceedings before the Idaho grand jury was improper. Generally, impeachment is a proper use of grand jury testimony, *e. g., Gollaher v. United States*, 419 F.2d 520, 523 (9th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969), so appellant's contention must rest upon his previous arguments that the Idaho grand jury proceedings were illegal.

■ Appellant did not object at trial or even in posttrial proceedings to the Idaho or the Washington grand jury proceedings. Nor did appellant object to Popp's impeachment. We are unable to accept appellant's proffered excuse that he could not have known of the alleged grand jury misuse until too late in the trial to seek recourse. Before trial began the Government had disclosed the Idaho grand jury transcript to appellant. Bouker's memorandum was released to appellant's counsel sometime during the course of the trial. Although the record does not reveal the exact date, it is clear that appellant had the memorandum in his possession on the day before the last trial day. Thus, his failure to permit the district judge to evaluate the grand jury proceedings is unjustified, and we shall not review the alleged improprieties. No plain error is evident, as the record contains nothing that can substantiate or disprove appellant's allegations. Fed.R.Crim.P. 52(b).

## IV.

The Government employed an analysis of appellant's bank deposits and withdrawals to establish appellant's understatement of taxable income. Appellant contends that the Government did not attempt to prove appellant's "cash on hand" on January 1, 1970, the beginning date of the tax years in question. The relevance of cash on hand is that if it were deposited into accounts during the tax years, it would explain those deposits and reduce the understatement of income. Specifically, appellant claims that the Government did not follow leads that might have demonstrated currency withdrawals made in late 1969.

Special Agent White conducted the investigation of appellant's income tax liability, and there is sufficient evidence that he diligently pursued all leads that could have disclosed nontaxable sources of funds, including cash on hand. White testified that he prepared a "complete analysis of all the bank accounts, savings and checking." He also stated that he covered leads and properly credited appellant for all nontaxable sources and that he examined financial statements given by appellant to financial institutions. There is no indication that White failed to evaluate 1969 withdrawals. After his investigation, White decided to use a cash on hand figure of zero, having found no evidence of cash on hand. An expert witness heard all the testimony at trial and examined all the exhibits, concluding that "there was insufficient evidence upon which to form a conclusion that there was cash on hand."

■ Looking at the evidence in a light most favorable to the Government, as we

attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminary to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing

that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

6. *See In re Grand Jury*, Nos. 76–1893, 76–1995 (9th Cir. May 2, 1977) (proscribing civil use by IRS of grand jury information without adversary hearing resulting in finding that disclosure is reasonably necessary), *withdrawn as moot* (9th Cir. June 28, 1977).

must, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942) the Government clearly presented sufficient evidence for the jury to infer that White had adequately pursued all leads and had correctly shown as the proper amount of cash on hand the zero figure.

AFFIRMED.