UNITED STATES of America, Appellee,

v.

Sonia VEGA, Appellant.

No. 1064, Docket 78–1038.

United States Court of Appeals,
Second Circuit.

Argued June 15, 1978.

Decided Nov. 30, 1978.

Jonathan J. Silbermann, Legal Aid Society, New York City (Martin Erdmann, Legal Aid Society, New York City, of counsel), for appellant.

Larry J. Silverman, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Harvey M. Stone, Michael H. Soroka, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for appellee.

Before MULLIGAN, OAKES and GUR-FEIN, Circuit Judges.

MULLIGAN, Circuit Judge:

Sonia Vega appeals from a judgment of the United States District Court for the Eastern District of New York, Thomas C. Platt, Judge, convicting her of a substantive possession count, 21 U.S.C. § 841(a)(1), a conspiracy count, 18 U.S.C. § 371, and a violation of the Travel Act, 18 U.S.C.

§ 1952(a)(3), by traveling in interstate commerce to promote the possession of heroin with intent to distribute. Appellant was sentenced to concurrent terms of five years' probation on each count under 18 U.S.C. § 5010, and she seeks reversal of the convictions. We affirm.

After receiving information from the proverbial "confidential source," agents of the Drug Enforcement Agency (DEA) had appellant, an eighteen-year-old woman, and her two male friends under surveillance from a Bronx address to LaGuardia Airport terminal where appellant and one of her companions (one Rentas-Fournier) were seen in possession of a yellow tote bag and a dark green suitcase, the other (Rivera) remaining apart from them for no apparent reason. All three took American Airlines Flight No. 377 for O'Hare Airport in Chicago; there they were followed from the airport to a gift shop. On their return to O'Hare on the evening of the same day, Rivera again remained somewhat separate from appellant and Rentas-Fournier. Needless to say, they were still under surveillance when they disembarked at Kennedy Airport in New York and proceeded to the baggage claim area. Rivera went to the taxi area, and appellant and Rentas-Fournier claimed the yellow tote bag and dark green suitcase. They were asked for identification by the DEA agents, and upon learning that Rentas-Fournier had none, an agent searched the suitcase with Rentas-Fournier's consent only to find one pound of heroin. After receiving proper *Miranda* advice, appellant waived her rights, corroborated the observations made by the DEA agents, and stated that she had known Rivera to be a trafficker in narcotics, had been asked to travel with him to Chicago for what she believed was a narcotics transaction, and had expected to get one hundred dollars for her participation. This evidence was developed at a suppression hearing and elaborated upon at trial, the agents testifying that appellant not only knew Rivera to be involved in narcotics trafficking but also had admitted that he "had been paying some of her bills."

Appellant did testify on her own behalf. She said that she was initially unaware of the purpose of the trip and became aware that it was for a narcotics transaction only when she witnessed the heroin purchase in Chicago. She then claimed that she cooperated with her accomplices only to insure her safe return home. She did not want to get involved and "wanted to go back home"; but because she had only $2.43 with her, a fact confirmed by one of the DEA agents, she accompanied Rentas-Fournier on the return trip. She denied that she had gone to Chicago to help the codefendants in their transaction or to transport the drugs to New York City. She also denied that Rivera paid some of her bills, explaining that she borrowed money from either Rivera or Rentas-Fournier, and denied saying that she expected to be paid for her trip. She complains on appeal of the following interrogation by the court, after her cross-examination by the prosecutor:

> The Court: Tell me, when you got back to the airport you were back in here, in Kennedy?
>
> The Witness: Yes.
>
> The Court: At 1:35 in the morning; right?
>
> The Witness: Yeah.
>
> The Court: You were back home; right?
>
> The Witness: Yeah.
>
> The Court: And you were stopped by two gentlemen who said they were members of the Federal Drug Enforcement Agency; right?
>
> The Witness: Yes.
>
> The Court: Now, when they stopped you and asked you about the luggage, did you tell them right then and there that there was heroin in the bag?
>
> The Witness: No.
>
> The Court: All right.

No objection to this interrogation was made. The prosecution argued the point in summation, again without objection. In addition to complaining that the judge's interrogation was plain error, appellant also argues that she was entitled to daily copy of the suppression hearing transcript, that

the judge's charge on her credibility was not fairly balanced, and that there was a failure of proof of violation of the Travel Act.

■ We quickly dispose of appellant's contention that the district court committed reversible error in refusing her request for the daily transcript of the suppression hearing. The value of the transcript to the appellant was minimal, and the alternative of informally obtaining the material from the court reporter was evidently readily available. See *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). Although the trial court mistakenly assumed that defense counsel had no right to order the transcript unless the prosecution ordered it, we fail to see how the denial of the transcript harmed appellant. See *United States v. Jonas*, 540 F.2d 566, 573 (7th Cir. 1976). The cases upon which appellant relies, e. g., *United States v. Acosta*, 495 F.2d 60 (10th Cir. 1974), all involve requests made prior to a second trial for the transcript of the first one.

■ Appellant also urges that the district judge's interrogation, which led to her admission that she was silent when she first encountered the DEA agents at Kennedy Airport, violated the appellant's Fifth Amendment right to remain silent. Reversal of the judgment is required, according to appellant, by the Supreme Court holdings in *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), where the Supreme Court labelled as error the prosecution's comment on the defendants' silence during a custodial interrogation after the defendants had been given *Miranda* warnings. *Hale* was determined on the supervisory power of the Supreme Court over the lower federal courts. *Doyle*, however, was bottomed on the Due Process Clause of the Fourteenth Amendment.

In *Doyle*, defendants in a state court criminal trial, after arrest and after having been given *Miranda* warnings, took the stand and gave an exculpatory story that had not previously been given to the police or the prosecutor. Over timely objection of counsel, they were then queried on cross-examination as to why they had not given the arresting officer their exculpatory explanations. In reversing their state court convictions the Court stated:

> Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

Id. at 618, 96 S.Ct. at 2245. The holding of the Court is explicit. "We hold that the use for impeachment purposes of petitioner's silence *at the time of arrest and after receiving Miranda warnings*, violated the Due Process Clause of the Fourteenth Amendment." Id. at 619, 96 S.Ct. at 2245 (emphasis added). Numerous cases in the wake of *Doyle* have recognized that crucial to the rulings in that case and in *United States v. Hale, supra*, was that an arrestee is in official custody and has been given the "implicit representations in the *Miranda* warnings that a defendant will not be penalized for his decision to remain silent." *United States v. Shields*, 571 F.2d 1115, 1118 (9th Cir. 1978); accord, e. g., *United States v. Mireles*, 570 F.2d 1287, 1291–92 (5th Cir. 1978); *Morgan v. Hall*, 569 F.2d 1161, 1165–66 (1st Cir. 1978), cert. denied, 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1142 (U.S. June 20, 1978); *United States v. Johnson*, 558 F.2d 1225, 1228–30 (5th Cir. 1977). Indeed, Justice Stevens, dissenting in *Doyle*, explicitly noted that in a case—such as that at bar— where *Miranda* warnings had not been given "nothing in the Court's opinion suggests that there would be any unfairness in using petitioners' prior inconsistent silence for impeachment purposes." 426 U.S. at 625– 26, 96 S.Ct. at 2248.

It is clear that *Doyle* was based not on the Fifth Amendment right against self-incrimination but rather on the Due Process Clause of the Fourteenth Amendment with-

out mention of self-incrimination. Id. at 618, 96 S.Ct. 2240. The Court found a fundamental unfairness in the prosecutor's use of a defendant's silence after the implicit assurance of the *Miranda* warnings that silence will carry no penalty. Here, the appellant received no *Miranda* warnings and indeed was entitled to none since she had not been placed in custody.[1] Thus, both factors which the Supreme Court recited in *Hale* and *Doyle* as giving rise to constitutional difficulties—that the defendant was in custody and had been given *Miranda* warnings—are absent in this case.

It may be argued that even absent custodial interrogation Vega was naturally reluctant to speak before a federal agent in the presence of her companion, Rentas-Fournier. Experience has shown that cooperating witnesses are, to say the least, not looked upon with favor by those engaged in the drug trafficking business. Whether this circumstance is sufficient to raise a constitutional issue, however, is a question we need not address here since the circumstances in this case make it evident that the questioning by the trial judge occasioned no error.[2]

We reject Vega's contention that evidence of her prearrest silence lacked probative value. See *Hale, supra,* 422 U.S. at 176, 95 S.Ct. 2133. We find that Vega's silence was highly probative of her credibility, which was very directly in issue in view of her denial that she had ever made the damaging admissions testified to by the DEA agent who took her statement after she waived her *Miranda* rights. The trial judge's determination that the probative weight of Vega's silence was sufficient to warrant its admission was sound in this instance because her own attorney opened the door to the issue on Vega's direct examination after she admitted that she witnessed the drug transaction in Chicago. At that point the following exchange took place on direct examination:

Q. Did you see a drug transaction in that apartment?

A. Yes, I did.

Q. What was in your mind when you saw that?

A. I had told him I wanted to go back home, I don't want to get involved in that.

Q. How much money did you have on you?

A. $2.43.

Q. And did you say this to Rentas-Fournier?

A. Yes, I did.

Q. *Did you call the police?*

A. *No, I didn't.*

Q. *Did you stay with these individuals?*

A. *I had to follow him through the whole procedure if I wanted to get back to New York.*

Transcript at 2.91–92 (emphasis added).

In this exchange counsel for Vega deliberately tried to create the impression that Vega's failure to alert the police in Chicago and her acquiescence in participation in the narcotics transaction were entirely explained by her lack of funds and her need to return to New York. The fact that she remained silent when first approached by Government agents in New York is certainly probative of the credibility of her justification for failing to notify the authorities in Chicago.[3] Moreover, in view of her attempt

---

1. It is undisputed that no *Miranda* warnings were required since Vega had not yet been placed in custody. See, e. g., *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Beckwith v. United States,* 425 U.S. 341, 345–46, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. See *United States v. Brown,* 548 F.2d 1194, 1208–10 (5th Cir. 1977); *United States v. Agee,* 440 F.Supp. 614 (E.D.Pa.1977), noting the problem of comment on a defendant's silence prior to *Miranda* warnings.

3. There is little need to belabor the fact that unless great leeway is afforded "in the scope of impeachment cross-examination some defendants would be able to frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge."

to make affirmative use of this circumstance on direct examination, questions aimed at preventing Vega's selective development of the subject were not unduly prejudicial. There is ample authority that a defendant's silence even *after Miranda* warnings have been given is "admissible for the purpose of rebutting the impression which [the defendant] attempted to create" in order to build himself up in the eyes of the jury. *United States v. Fairchild,* 505 F.2d 1378, 1383 & n. 8 (5th Cir. 1975); accord, *United States v. Blalock,* 564 F.2d 1180, 1182 (5th Cir. 1977), vacated on other grounds, 575 F.2d 1151 (5 Cir. 1978); *United States v. Rubin,* 559 F.2d 975, 983 n. 4 (5th Cir. 1977), vacated and remanded on other grounds, —— U.S. ——, 99 S.Ct. 67, 58 L.Ed.2d 102 (U.S. Oct. 3, 1978); *Hayton v. Egeler,* 555 F.2d 599, 602 n. 1 (6th Cir.), cert. denied, 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463 (1977); *United States v. Conlin,* 551 F.2d 534, 537 (2d Cir.), cert. denied, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977). cf. *United States v. Carr,* 584 F.2d 612, 618 (2d Cir. 1978). It follows, *a fortiori,* that in the instant case impeachment of Vega's testimony by reference to her *pre-arrest* silence was not error.

In view of the authorities cited above it is not surprising that Vega contended in her brief that "the district judge impermissibly *injected evidence* of appellant's silence into the case." (Br. at 18) (emphasis added). This assertion, however, is belied by the record, which demonstrates that her counsel—not the trial judge—brought up the issue on direct examination when he attempted to imply to the jury that Vega failed to call the police in Chicago only because she was broke and a long way from home.

█ Furthermore, even assuming *arguendo* that Vega's prearrest silence was inadmissible, counsel for the defendant made no objection to the questioning by the judge either at the time the question was asked or later in the course of the trial. The defense attorney also failed to object to the prosecutor's summation reference to Vega's silence and sought no curative instruction. Vega, therefore, waived the right to raise the issue on appeal.

In *United States v. Rose,* 525 F.2d 1026, 1027 (2d Cir. 1975), cert. denied, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976), decided after remand for reconsideration in light of *Hale,* this court held that failure of counsel to make evidentiary objections at trial foreclosed on appeal the issue of improper comment on a defendant's silence. To circumvent our holding in *Rose,* the argument is made that where the query is posed not by counsel but by the trial judge any objection might appear to be futile to the defense attorney and might even antagonize the district court judge. Appellant claims that under such circumstances failure to make a timely objection should not effect a waiver of the issue on appeal.

█ We reject this contention. A trial judge has an active responsibility to assure that the issues are clearly presented to the jury. *United States v. Brandt,* 196 F.2d 653, 655 (2d Cir. 1952). To this end, limited questioning of witnesses by the trial judge is "entirely appropriate." *United States v. Berardelli,* 565 F.2d 24, 30 (2d Cir. 1977); see *United States v. Natale,* 526 F.2d 1160, 1170 (2d Cir. 1975), cert. denied, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976); See *United States v. Williams,* 575 F.2d 388,

---

*Doyle v. Ohio, supra,* 426 U.S. at 617 n. 7, 96 S.Ct. at 2244; accord, *Brown v. United States,* 356 U.S. 148, 154–55, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). For this reason, certain evidence which is not admissible in the prosecution's case in chief may be introduced for impeachment purposes. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (defendant had requested lawyer but was questioned before counsel's arrival); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (post-arrest statements of defendant who had

not been given *Miranda* warnings); *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (evidence of unlawfully seized narcotics). Indeed, the Supreme Court in *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926) held that the defendant's silence at a prior *trial* was admissible for impeachment purposes. It should be noted, however, that the viability of *Raffel* is questionable. *United States v. Hale, supra,* 422 U.S. at 175 n. 4, 95 S.Ct. 2133.

392 (2d Cir. 1978) Indeed, such interrogation by the trial judge is specifically approved by the Federal Rules of Evidence, Fed.R. Evid. 614(b). Of course the judge must be conscious of the special attention and respect he commands from the jury and therefore caution in maintaining an appearance of impartiality must be exercised. *United States v. Nazzaro,* 472 F.2d 302 (2d Cir. 1973); *United States v. Brandt, supra.* In this case, however, there is no claim of witness badgering or continuous intrusion by the trial court. Compare, e. g., *United States v. Brandt, supra* (trial judge asked 900 questions, disrupted orderly presentation of evidence by the defense, and made numerous remarks undercutting the presumption of innocence).

The argument that trial counsel's failure to object at trial might be due to timidity or fear of antagonizing the judge totally overlooks Fed.R.Evid. 614(c), which provides that objections to the interrogation of witnesses by the court are to "be made at the time or at the next available opportunity when the jury is not present." The original draft of rule 614 retained an automatic objection until the conclusion of the trial. 3 Weinstein's Evidence ¶ 614[04] at 614-15. However, this draft was criticized as "unrealistic and impractical" by The Committee of New York Trial Lawyers which noted: "Judges are not so sensitive that counsel should be reluctant to make a proper objection merely because the question came from the bench." Id. Thus the present language of Fed.R.Evid. 614(c), recommended by the American College of Trial Lawyers Committee, id. at n. 1, was adopted in place of the preliminary draft's automatic objection.

■ The final version of rule 614(c) is also consistent with the approach taken by courts prior to the adoption of the federal rules. See, e. g., *United States v. Doran,* 483 F.2d 369 (1st Cir. 1973), cert. denied, 416

U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974); *United States v. Barbour,* 137 U.S. App.D.C. 116, 120, 420 F.2d 1319, 1323 (1969). For example, in *United States v. Doran, supra,* at 375, trial counsel failed to object to allegedly improper questioning of witnesses by the trial judge prior to completion of the witnesses' testimony, but at least apparently raised a later objection, which counsel failed to do here. Id. at 374. On appeal the argument was made that an objection would have conveyed to the jury that the judge was hostile to the defendant's case. The circuit court rejected the argument, observing that a bench conference could have alleviated the problem. Id. Defense counsel here also failed to request such a private colloquy. The court in *Doran* further noted that even though in a few instances the judge's questions may have cast doubt on the witnesses' credibility, this did not *per se* create reversible error, especially in view of the court's instruction that the jury was to draw no adverse inferences from the fact that the judge did interrogate the witness. Id. at 375 & n. 8. In the instant case a nearly identical jury instruction was given by Judge Platt.[4] Thus, even if any error was committed here by the judge's asking of the single question complained of on this appeal, it assuredly was cured by the court's instructions. Moreover, in view of the sound rationale underlying Fed.R.Evid. 614(c) and the relevant case law, we conclude that defense counsel was not relieved of his obligation to make timely objection to references to Vega's silence merely because the trial judge rather than the prosecutor asked the purportedly offensive question.

■ Finally, it is familiar law that on the appeal from a criminal conviction we are to view the evidence in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.

4. The trial judge's instruction was as follows:
The fact that the Court has asked one or more questions of a witness for clarification or admissibility of evidence purposes, is not to be taken by you in any way as indicating that the Court has any opinion as to the guilt or innocence of the defendant in this case, and you are to draw no such inference therefrom. That determination is up to you, and to you alone, based upon all of the facts in the case and the applicable law in these instructions.

680 (1942). There was incontrovertible proof that Vega was in the possession of one pound of heroin; the only question was whether she acted with the requisite criminal intent. Her own admissions to DEA agents, corroborated by other substantial evidence, established this element. The issue of whether she had made the admissions of knowledge and intent as testified to by those agents was disputed by her trial testimony, which the jury properly rejected in view of its inherent implausibility.

■ Although Vega testified that she had dated Rentas-Fournier on several occasions, she testified that she didn't know his name and had never thought to ask him what it was. Vega, who was on welfare, testified that she was asked to fly to Chicago to spend a weekend there with Rivera and Rentas-Fournier and accepted the invitation without any idea of where she would stay or what they were going to do. She testified that she left her one-year-old child with a sister, telling her that she, Vega, was going to a dance or a house party on Long Island. Vega left no phone number or other means by which she could be contacted in case of an emergency. The explanation for her behavior at the airport was even less persuasive. Vega also denied that she had admitted knowing that the trip to Chicago was for the purpose of participating in a drug transaction with, man known by her to be a drug trafficker and for a $100 fee. She did concede, however, that "some things" Agent Sears had testified she told him were in fact accurate.

A reading of the trial transcript confirms the Government's assessment that the proof of Vega's guilt was overwhelming and her exculpatory testimony inherently incredible. The evidence took less than a day to be presented and the jury deliberated less than two hours. In sum, even if error was committed—and we find none—it was harmless.

■ Appellant also claims error in the court's charge as to the credibility of the defendant as a witness.[5] We have held in *United States v. Floyd,* 555 F.2d 45, 47 n. 4 (2d Cir.), cert. denied, 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977), that it is preferable for the trial court to include in its charge language indicating that "a defendant's vital interest in the outcome of his trial is not inconsistent with the ability to render truthful testimony." See *United States v. Martin,* 525 F.2d 703, 706 n. 3 (2d Cir.), cert. denied, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975). The charge here was not explicitly modified to provide the balancing element discussed in *Floyd.* However, no specific objection was made to the charge on this point. Even after *Floyd* we have recently held that a general objection to the charge such as that in the case at bar is insufficient and that in the face of a failure to object on the specific ground that the charge omitted the language suggested in *Floyd,* there was no plain error. *United States v. Rucker,* 586 F.2d 899 (2d Cir. 1978). Moreover, we note that the charge here did contain some balancing language.[6]

5. In so far as pertinent here, the court charged:
   A defendant who wishes to testify is a competent witness; and defendant's testimony is to be judged in the same way as that of any other witness:
   The law permits a defendant, at her own request to testify on her own behalf.
   The testimony of an individual defendant is before you. You must determine how far it is credited. The deep personal interest which every defendant has in the result of his or her case should be considered in weighing her testimony.
   You are instructed insofar as false testimony, the greater the interest the stronger is the temptation, and the interest of a defendant is of a character possessed by no other witness and is a matter therefore which may seriously affect the credence which should be given to her testimony.

6. The judge charged, in part:
   A defendant who wishes to testify is a competent witness; and *defendant's testimony is to be judged in the same way as that of any other witness:*
   The law permits a defendant, at her own request, to testify on her own behalf.
   The testimony of an individual defendant is before you. You must determine how far it is credited. The deep personal interest which every defendant has in the result of his or her case should be considered in weighing her testimony. (Emphasis added.)

We need not reach appellant's argument that her conviction under the Travel Act, 18 U.S.C. § 1952(a)(3), must be reversed because she was not engaged in a continuing course of conduct amounting to a "business enterprise." 18 U.S.C. § 1952(b)(1). She was given concurrent sentences of five years' probation on each count of her conviction. Under these circumstances we decline to rule on this issue. E. G., *United States v. Beverly,* 562 F.2d 201, 204 (2d Cir. 1977), cert. denied, 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978); *United States v. Mejias,* 552 F.2d 435, 444–45 (2d Cir.), cert. denied, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977).

Affirmed.

OAKES, Circuit Judge (concurring):

I concur in the result, and I also concur in Judge Gurfein's concurring opinion on the jury instruction as to the defendant's credibility.

GURFEIN, Circuit Judge (concurring):

I agree with all of my brother Mulligan's excellent opinion. I write only to say that if I did not feel bound by *United States v. Rucker,* 586 F.2d 899 (2d Cir. 1978), so recently decided, I would hold that the jury instruction on how to assess the credibility of a defendant who testifies was so unbalanced as to amount to plain error.

If there is one thing of which a lay juror need not be reminded, it is that a person accused of crime has a strong temptation to lie his way out of it. The parable of Parson Weems, in which George Washington admitted that he had chopped down the cherry tree, supposedly marked George as unusually virtuous because he told the truth in the face of an accusation. The common tendency to view a defendant's testimony as self-serving and subject to doubt hardly needs reemphasis from a trial judge. Yet, when he does remind the jury of the self-interest of a defendant who has taken the stand, he should balance it by a statement that a defendant, *mirabile dictu,* can be telling the truth. An omission of this balancing seems to me to amount to telling the jury that they need not be concerned at all with that alternative possibility.

The error is serious because the heavily weighted instruction makes the choice of the defendant to testify on his or her own behalf the basis for inferentially downgrading the presumption of innocence. We have recently been instructed that refusal to charge the presumption of innocence is constitutional error even though the burden of proof was properly charged. *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). The Court observed that jury instructions are for ordinary citizens who are not legal scholars. To paraphrase Mr. Justice Powell, 436 U.S. at 487, 98 S.Ct. at 1936, the unbalanced charge "could be viewed as an invitation to the jury to consider petitioner's status as a defendant as evidence tending to prove his guilt."

Since *Taylor* is distinguishable so far as the due process formulation is concerned, I do not assert that the charge here was a violation of due process, but it was surely within our supervisory power to correct.

I write only to suggest respectfully to our fellow judges in the District Courts who are on the firing line that they ought to consider the point in drawing jury instructions.

It is so easy to balance the charge, as Judge Owen did in *United States v. Martin,* 525 F.2d 703, 706 n. 3 (2d Cir.), cert. denied, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975), as follows:

> However, I want to say this with equal force to you—however, it by no means follows that simply because a person has a vital interest in the end result, that he is not capable of telling a truthful and straightforward story.
>
> It is for you to decide to what extent, if at all, defendant's interest has affected or colored his testimony.

We commented on that charge in *United States v. Floyd,* 555 F.2d 45, 47 n. 4 (2d Cir.), cert. denied, 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977), saying:

> "[L]anguage more nearly akin to that approved in *United States v. Martin,* 525

F.2d 703, 706 n. 3 (2d Cir. 1975), is preferable because it explicitly states that a defendant's vital interest in the outcome of his trial is not inconsistent with the ability to render truthful testimony."

It is too bad that the comment in *Floyd* was relegated to a footnote. If this concurring statement serves no other purpose, at least it restores the sage comment to text where it is more easily seen.