**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Anthony Michael AHRENHOLZ,**
**Defendant-Appellant.**

No. 77–5285
**Summary Calendar. \***

United States Court of Appeals,
Fifth Circuit.

March 10, 1978.

---

\* Rule 18, 5th Cir.; *See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5th Cir., 1970, 431 F.2d 409, 410–14, Part I.

Dennis Hedge, Julian D. Clarkson, Fort Myers, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Gary J. Takacs, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before COLEMAN, GODBOLD and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

This is a direct criminal appeal from defendant Ahrenholz's conviction by a jury for assaulting an officer of the United States Coast Guard who was engaged in the performance of his official duties. 18 U.S.C. §§ 111 and 1114 (1970). Ahrenholz seeks reversal of this conviction on the ground that the district court erred in denying his motion for a mistrial after the prosecution offered rebuttal testimony that the defendant remained silent after being advised of his *Miranda* rights.

Briefly, the facts brought out at the trial showed that on October 25, 1976, a Coast Guard officer boarded Ahrenholz's boat while the officer was in the process of attempting to locate a boat that he had earlier observed traveling at a high rate of speed without running lights. The prosecution's witnesses testified that the boarding officer identified himself and informed Ahrenholz that he was conducting a routine safety inspection. After the officer had determined that the boat's engine was warm, indicating that the boat had recently been operated, he prepared to reboard the Coast Guard vessel. The officer testified that the defendant then pushed him into the water. The defense theory was that a pushing match ensued between the officer and Ahrenholz, and the officer fell. Shortly thereafter, FBI agents went to Ahrenholz's residence, read him the *Miranda* rights, and asked to talk with him. He refused to talk with the agents at that time but subsequently did go to the FBI office, accompanied by two attorneys (one of whom was his father) and gave a statement. Ahrenholz was represented at trial by his father and another attorney. The father-son relationship was revealed to the jury by defense counsel during his opening remarks. Record, Vol. 2, at 97. Throughout the defendant's testimony, the relationship was clear. *E. g.,* Record, Vol. 2, at 240 and 264.

On direct examination of Ahrenholz, conducted by Ahrenholz's father, the following dialogue occurred:

Q. Tony, in the course of the investigation of this matter here which we are here about today, did you have occasion to give a statement to the FBI?

A. Yes; I did.

Q. And, how did you happen to give that statement?

A. Well, they asked if I would come in and talk with them.

Actually, they came to my door the next morning and asked me if I would talk to them and I said I would rather not.

And I agreed to go in later with my father and Mr. Hedge [the other attorney] to talk with them.

Record, Vol. 2, at 251–52.

The prosecution called as a rebuttal witness one of the FBI agents who had initially contacted Ahrenholz and read to him the *Miranda* rights, and to whom Ahrenholz had later given his statement. In the course of the rebuttal testimony, the following colloquy ensued:

Q. Special Agent O'Brien, at that time that you contacted the defendant, Tony Ahrenholz, what if anything occurred?

A. Mr. or Tony Ahrenholz was contacted at his mother's residence on Bayside Road at Fort Myers Beach. And after being advised of his rights, he stated that his attorney had instructed him not to give a statement to the FBI without the attorney being present.

Record, Vol. 2., at 302.

We held in *United States v. Blalock*, 564 F.2d 1180, 1182 (5th Cir. 1977), that it was not error under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), for the prosecution to explore by cross-examination the defendant's initial silence after the defendant "attempted to make affirmative capital of the fact that although he had initially been silent he had later cooperated and given a full statement." Here, even assuming that the prosecutor's question was designed to elicit that Ahrenholz was initially silent, *United States v. Impson*, 531 F.2d 274, 278 (5th Cir. 1976), no error occurred since Ahrenholz had already given this information during his direct examination. Having found no error in Ahrenholz's conviction, we therefore hold that the district court's judgment is AFFIRMED.