**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Edward SELTZER,**
**Defendant-Appellant.**

No. 85–3449.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1986.

Decided July 7, 1986.

Rehearing and Rehearing En Banc
Denied Aug. 22, 1986.

Stanley S. Arkin (argued), Stanley S. Arkin, P.C., New York City, for defendant-appellant.

Robert J. Becker (argued), Sp. Atty., Cleveland, Ohio, Bernard A. Smith, Westlakem, Ohio, for plaintiff-appellee.

Before KEITH and MARTIN, Circuit Judges, and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Defendant-Appellant Edward Seltzer has appealed to this court from a Judgment and Sentence entered in the United States District Court for the Northern District of Ohio, Eastern Division, on the verdict of a jury finding him guilty of perjuring himself before the grand jury in violation of Title 18, Section 1623, United States Code, as charged in Counts III, IV, V, and VI of the superseding indictment.

## I.

### A.

In May of 1981 the grand jury in the United States District Court for the Northern District of Ohio, Eastern Division, was investigating possible crimes committed against the United States by one Reuben Sturman including crimes related to the Federal Income Tax Law. Appellant Seltzer had previously been an employee of Sturman. Seltzer was called before the grand jury as a witness on May 21, 1981.

Seltzer was informed of his rights and upon being questioned refused to answer on the grounds that his answers might tend to incriminate him. The Special U.S. Attorney questioning appellant then asked the Grand Jury Foreman to read an Order, signed by U.S. District Judge John Manos, compelling appellant, pursuant to 18 U.S.C. §§ 6002 *et seq.*, to "give testimony and provide other information which [appellant] refuses to give or provide on the basis of his privilege against self incrimination as to all matters about which [appellant] may be interrogated before said Grand Jury." Joint Appendix ("Jt.App.") at 56.[1]

Appellant discussed the matter with his attorney and upon returning to the grand jury stated that he understood that pursuant to the order he had been granted use immunity and that nothing he said before the grand jury could be used against him. The Special U.S. Attorney replied that appellant was correct, but that if he failed to testify truthfully before the grand jury he could be prosecuted for perjury. Seltzer answered that he understood and that he had every intention of testifying truthfully.

Whereupon, the questioning continued, and Seltzer testified, *inter alia*, that he had never used any names other than Edward Seltzer either personally or in business; that he did not know a Sheldon Silverstone, International Bancorpest, or Merchants and Shipowners Bank; and, that, other than certain conversations he had with Sturman's attorney, he had nothing to do with certain wire transfers of money from Swiss banks and/or Merchants and Shipowners Bank and International Bancorpest into accounts in the names of International Book Sales and/or World Wide Publications, two Sturman-controlled companies.

Subsequent to appellant's 1981 appearance before the grand jury he wrote a letter to its foreman admitting he had not

told the truth and thus had perjured himself. Specifically, appellant wrote that he had refused to answer the question whether he believed that Reuben Sturman was the source of money that appellant had received in Switzerland. He wrote that he had speculated that Sturman was the source of the money but never inquired as to who was the actual investor.

On April 7, 1983, appellant was again called before a Federal Grand Jury conducting an investigation into possible Federal Income Tax violations by Reuben Sturman.[2] Seltzer was again informed of his rights including his right to review his prior testimony before the grand jury and either elaborate on, clarify, or change that prior testimony.

Appellant consulted with his attorney. He then responded that he was not sure whether or not he had signed three certain checks purportedly signed by him and alluded to in his prior testimony. Appellant was again informed that the grant of use immunity did not protect him from prosecution for perjury in the grand jury.

Appellant then testified, in part, that he had never used any name other than his own name in any business or personal transactions; he had never used the name Morton Weiss; he did not recall signing Morton Weiss' name to a wire transfer order which transferred $115,000 from the United California Bank ("UCB") to the Merchants and Shipowners Bank.

Appellant testified that he did not recall ever seeing the wire transfer order. He testified that he would not say he did not sign it and that it was possible that he did sign it. Seltzer also testified that he did not recall ever being in the UCB in London.

Appellant was asked to compare the signature on the wire transfer order with handwriting exemplars he had given to the

---

1. References are to the Joint Appendix filed by the parties to this appeal.

2. The court below implicitly found that appellant had appeared before two separate grand juries on two separate occasions. Although we express our disagreement with this particular

finding, (*See In re Di Bella*, 518 F.2d 955 (2nd Cir.1975)), it is not necessary for us to decide whether appellant appeared before one grand jury or two since the government has not appealed the dismissal of counts one and two. Therefore, we will not address that question.

Internal Revenue Service signing the name "Morton Weiss." He concluded that the signature on the wire transfer was his. After admitting he had signed the document appellant still testified that he did not recall being in the UCB in London.

Appellant testified that he had no independent recollection of taking the $115,000 into the UCB in London and that he did not know who had given him the money to transfer to the United States. Seltzer testified that he might have signed Weiss' name on other papers; that it was possible he did this of his own volition; that it was not likely someone else had directed him to do so; that he had never asked Weiss if he could sign Weiss' name; and, that he did not know why he had done so.

Substantially the same course of testimony followed with respect to two more wire transfer orders, one signed with the name "Ralph Stelzer" and transferring $58,000 from the UCB in London to the International Bancorpest account at the UCB of New York; the other transfer in the amount of $25,000 signed by "Ralph Stelzer" and transferring the money from the UCB in London into the International Bancorpest account at the UCB in New York.

Appellant testified that he had no recollection where he got this money. He did not know why the money was sent back to the United States. He also did not recall ever having made any transactions at the UCB in London.

**B.**

On December 13, 1984, a two count indictment was returned against appellant in the United States District Court for the Northern District of Ohio charging him with one count of perjury in his 1981 grand jury appearance and one count of perjury in his 1983 grand jury appearance. Appellant moved to dismiss the indictment on the grounds, *inter alia*, that the grand jury's use of his immunized 1981 testimony to indict for the alleged 1983 perjury and use of his 1983 immunized testimony to indict

for the alleged 1981 perjury violated the fifth amendment to the Constitution of the United States and the federal immunity statute, 18 U.S.C. §§ 6002 *et seq.*

Subsequently, the grand jury returned a six count superseding indictment which charged appellant with two counts of perjury at the 1981 appearance and four counts at the 1983 appearance. Appellant renewed his Motion to Dismiss. By means of a Memorandum Opinion dated March 26, 1985, District Judge David D. Dowd granted appellant's motion with respect to counts one and two and dismissed those counts. The motion was denied as to counts three through six relating to the 1983 appearance. Judge Dowd also ruled, over appellant's objection, that the prosecution would be permitted to introduce at trial appellant's 1981 immunized testimony, to the extent relevant, for the purpose of proving the 1983 offense.[3]

At appellant's trial before a jury the government read transcripts of appellant's grand jury appearances into the record and attempted to portray appellant's grand jury testimony with respect to International Book Sales (of which appellant was the designated president) as highly incredible. This was particularly the case with respect to testimony that appellant met with Sturman's attorney and was extended a $200,000 line of credit on the spot with no written agreement, no interest charged, and no time specified for repayment. The alleged consideration was a 50% future interest in a business not yet established. Testimony was also read into the record establishing that appellant drew on most of the $200,000 line of credit, never repaid it, and was never asked to repay it. When International Book Sales ("IBS") folded, its remaining inventory was turned over to another company run by appellant's former employer, Reuben Sturman.

Appellant's grand jury testimony indicated that although he was the sole officer of IBS he did not know if stock was ever

---

**3.** Judge Dowd's Memorandum Opinion ruling on defendant-appellant's pre-trial motions is published at 621 F.Supp. 714 (N.D. Ohio E.D. 1985).

issued. Appellant did not know why other related corporations were formed with his former employer's input, what their names stood for, what his relationship was with them, or why names were changed.

Appellant testified before the grand jury that he discussed business with Sturman and that Sturman offered him a consultant position when IBS folded, but appellant denied ever forming any opinion as to whether Sturman had provided financing for IBS. It is with respect to this testimony that Seltzer later wrote to the grand jury foreman admitting he had not told the truth while testifying before the grand jury.

The government introduced evidence of bank documents which showed large amounts of money derived from Switzerland and England deposited in IBS accounts as capital and loans. These included three wire transfer orders signed by "Morton Weiss" and "Ralph Stelzer" sending $197,000 in American currency from London into Sturman accounts including $27,000 into IBS. Handwriting exemplars obtained from appellant showed conclusively that he had forged those signatures.

The defense attempted to portray appellant as a cooperative grand jury witness who understood his obligation to tell the truth and had no reason to lie. Testimony of an expert witness, Dr. Elizabeth Loftus, a professor of psychology, was offered by the defense to establish that it is not unusual for an individual to forget events, such as highly unique or important events, which would normally be expected to be remembered.

After summations the trial court instructed the jury, *inter alia,* and over defendant's objection, that materiality had been determined by the court as a matter of law and that it was not a matter for the jury's consideration. The court denied appellant's request that the jury be charged that it must find materiality beyond a reasonable doubt in order to convict. The case was submitted to the jury which returned verdicts of guilty on all four counts. Appellant received an aggregate sentence of eighteen (18) months imprisonment. He was released on bail pending appeal pursuant to 18 U.S.C. § 3143(b). This appeal followed.

## II.

This case presents four issues for our consideration:

1. Whether the evidence presented below was legally sufficient to convict appellant of falsely testifying in 1983 that he had no present recollection of the 1976 wire transfer orders.

2. Whether the use, both at trial and before the indicting grand jury, of appellant's 1981 immunized testimony to indict and convict for an alleged 1983 perjury violated the fifth amendment to the Constitution of the United States and the immunity statute.

3. Whether the trial court abused its discretion in allowing cross-examination and prosecutorial comment upon appellant's invocation before the grand jury of his fifth amendment privilege.

4. Whether appellant's constitutional right to a trial by jury was violated when the court removed materiality from the jury's determination and instructed the jury that this element had been established as a matter of law.

## A.

Seltzer argues that as a matter of law the prosecution failed to meet its burden of proving beyond a reasonable doubt that he in fact remembered the wire transfer orders in 1983. The government contends that (1) undisputed evidence of other direct falsehoods and perjury relating to the wire transfer orders; (2) the unforgettable nature of the events; (3) Seltzer's motive to lie; (4) the incredible nature of his testimony; and (5) Seltzer's evasive and deceptive answers to questions all constitute more than sufficient evidence to establish appellant's guilt beyond a reasonable doubt. The government also asserts that circumstantial evidence is sufficient to establish Seltzer's state of mind, and in fact, direct

evidence on this question is impossible to produce.

We have held that on appeal from a criminal conviction we must only determine "whether the relevant evidence viewed in the light most favorable to the government could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt." *United States v. Meyers*, 646 F.2d 1142, 1143 (6th Cir.1981) (citations omitted). *See also United States v. Strong*, 702 F.2d 97, 100 (6th Cir.1983).

This standard of review is the same whether evidence reviewed is direct or circumstantial. *United States v. Meyers, supra* at 1143. We have stated, with respect to evidence of a mental state: "Although *direct evidence on state of mind is impossible to produce,* circumstantial evidence is useful and competent for this purpose." *Pitts v. United States*, 763 F.2d 197, 201 n. 6 (6th Cir.1985) (emphasis added). *See also Fotie v. United States*, 137 F.2d 831, 842 (8th Cir.1943).

■ At trial the prosecution introduced evidence showing appellant had lied at least three times in direct relation to the wire transfer orders at issue. Additional direct evidence indicated that appellant lied to the grand jury when he stated he had never formed an opinion as to whether Reuben Sturman had financed IBS and that appellant had subsequently admitted his lie. Other testimony established that the transactions were far from routine and were highly unusual for the banking community, much less the average citizen. Appellant was uncooperative in testifying before the grand jury, contrary to the picture he attempted to paint in the court below and now attempts to portray here.

Although the bulk of the government's case against the appellant consisted of circumstantial evidence, such evidence is "useful and competent for this purpose." *Pitts v. United States, supra.* We believe that taken together and viewed in the light most favorable to the government, the undisputed evidence of other direct falsehoods and perjury, the particular complex and unusual nature of the events appellant claims he does not recall, the incredible nature of his testimony, appellant's evasive and deceptive answers, and his uncooperativeness constitute such relevant evidence as could be accepted by a reasonably-minded jury as adequate and sufficient to support a conclusion of appellant's guilt beyond a reasonable doubt.

**B.**

Title 18 U.S.C. § 6002 provides:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

In *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980), the Supreme Court reversed the Third Circuit which had reversed Apfelbaum's conviction. The Court held that proper invocation of the fifth amendment privilege against compulsory self-incrimination allows a witness to remain silent but not swear falsely. The Court held further that neither the immunity statute nor the fifth amendment require admissibility of immun-

**1120**

ized testimony to be governed by any different rules than other testimony at a trial for making false statements in violation of 18 U.S.C. § 1623(a). *Id.,* at 117, 100 S.Ct. at 950.

In *Apfelbaum* the defendant had made only one grand jury appearance. The issue was whether truthful immunized grand jury testimony could be introduced in a subsequent prosecution for perjury before the grand jury. Justice Rehnquist, writing for the Court, first emphasized the language of § 6002 which provides " 'no testimony or other information compelled under the order ... may be used against the witness in any criminal case, *except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.'* (Emphasis added.)" *Id.* at 122, 100 S.Ct. at 952. Justice Rehnquist concluded that "[t]he statute ... makes no distinction between truthful and untruthful statements made during the course of the immunized testimony. Rather it creates a blanket exemption from the bar against the use of immunized testimony in cases in which the witness is subsequently prosecuted for making false statements." *Id.*

The Third Circuit had reversed Apfelbaum's conviction on the ground that perjury prosecutions based on immunized testimony are a "narrow exception" to the principle that a witness should be treated as if he had remained silent after invoking the fifth amendment privilege. 584 F.2d 1264, 1269–1270. Justice Rehnquist responded, relevant to the case *sub judice,* that even allowing truthful and untruthful immunized testimony in a subsequent perjury prosecution "the exception surely would still be regarded as 'narrow,' once it is recognized that the testimony remains inadmissible in all prosecutions for offenses committed *prior to* the grant of immunity that would have permitted the witness to invoke his Fifth Amendment privilege absent the grant." *Id.,* 455 U.S. at 128, 100 S.Ct. at 956. (Emphasis added.)

Seltzer here appeals from a conviction for perjury committed in 1983. His 1981 grand jury testimony therefore was *not* used in a prosecution for an offense committed *prior to* the 1981 grant of immunity which would have permitted him to invoke his fifth amendment privilege absent the grant.

The Court in *Apfelbaum* reaffirmed the test for application of the fifth amendment privilege as: " '[W]hether the claimant is confronted by substantial and "real," and not merely trifling or imaginary, hazards of incrimination. *Rogers v. United States,* 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344; *Brown v. Walker,* 161 U.S. 591, 600, 16 S.Ct. 644, 648, 40 L.Ed. 819.' *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968)." *Apfelbaum, supra,* 445 U.S. at 128, 100 S.Ct. at 956. Justice Rehnquist again cited *Marchetti* for the proposition that " 'prospective acts will doubtless ordinarily involve only speculative and insubstantial risks of incrimination.' 390 U.S., at 54, 88 S.Ct. at 705." *Apfelbaum, supra,* 445 U.S. at 129, 100 S.Ct. at 956.

■ Pursuant to this analysis, in 1981, before his first appearance before the grand jury, appellant faced "only speculative and insubstantial risks of incrimination." *Id.* Accordingly, we hold that neither the fifth amendment nor the immunity statute prevent use of appellant's 1981 immunized testimony at his trial for perjury before the grand jury in 1983 because, at the time appellant was granted immunity in 1981, the privilege would not have protected him against false testimony he might later decide to give in either 1981 or 1983.

■ With respect to appellant's claim that use of his 1981 grand jury testimony before the indicting grand jury violated the fifth amendment and immunity statute, it has been held that the phrase "criminal case" as used in § 6002 includes grand jury proceedings as well as trial. *United States v. Gregory,* 730 F.2d 692 (11th Cir.1984), *reh'g denied,* 740 F.2d 979 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1171, 84 L.Ed.2d 321 (1985). Accordingly, the foregoing analysis also applies to that part of appellant's argument challenging use of the 1981 testimony before his indicting

grand jury, and we find no error in that respect.

## C.

During the government's opening statement at trial a side bar conference was held out of hearing of the jury. At that point the subject of appellant's immunization was first raised by Judge Dowd. He stated that he did not expect the government to get into the proposition that Seltzer was immunized. Judge Dowd stated he believed it would be inappropriate for the jury to know Seltzer testified only with a grant of immunity.

Subsequently, the government asked the court to prohibit the defense from inferring in any way during the course of the trial that Seltzer was a willing, cooperative witness. The court responded that if defense counsel opened that door he would allow the government to go through it.

Seltzer first testified upon direct examination that his understanding of his rights and obligations when he appeared before the grand jury in 1983 was that he had been given immunity by the government. He testified at trial: "[T]hat if I told the truth, there was nothing that could possibly happen to me and that I was to tell the truth, not speculate, just tell what I knew to be the facts, what I knew to be the truth." Jt. App. at 408.

By his testimony appellant attempted to create the impression that he had been cooperative during the grand jury proceedings. Following the direct examination of the defendant the government sought permission, out of hearing of the jury, to mention that Seltzer's testimony was compelled both in 1981 and 1983. Government counsel also stated that by showing his willingness to cooperate, and by mentioning that he had an opportunity to consult with an attorney during the periods when he was questioned, Seltzer had opened the door to this line of questioning by the government. The court ruled it would allow the inquiry.

After Seltzer refused to acknowledge that he had been uncooperative government counsel asked the questions to which Seltzer's appeal is directed. Specifically, Seltzer was asked:

Q  Isn't it a fact that in your 1981 testimony or 1981 appearance that when you appeared you were asked to testify but refused to testify and had to be compelled by court order to testify and that is why you were given immunity?

A  I don't know if that's the meaning of it. My attorney told me I had a right to refuse to testify. I did so, and then the Government gave me immunity.

Q  Do you recall that that right to testify of your Fifth Amendment privilege that you had involved the right to not testify if you thought that any testimony that you might give would tend to incriminate you?

MR. ARKIN: Objection to the form of the question, your Honor.

THE COURT: Overruled.

A  Can you repeat the question, please?

Q  Did you understand that your Fifth Amendment privilege meant that you could refuse to testify if you thought truthful answers to any questions would tend to incriminate you on criminal activity?

A  I believe that's the way it was explained. The exact words, I don't know.

Jt. App. at 419–420.

During closing argument defense counsel stated that appellant "had immunity so that whatever he said could not be used against him." Jt.App. at 470. Then, on rebuttal, to again dispel the image of a cooperative grand jury witness, the government argued that Seltzer had refused to testify before the grand jury and that his testimony had been compelled under an immunity order.

The scope and latitude of cross-examination are matters left to the discretion of the trial judge. *United States v. Garrett*, 542 F.2d 23, 25 (6th Cir.1976); *United States v. Daniels*, 528 F.2d 705 (6th Cir.1976).

"Immunity" is merely protection from prosecution granted to a witness who has asserted his or her fifth amendment rights. *See, e.g., Apfelbaum, supra*, 445 U.S. at

122–123, 100 S.Ct. at 952–953; *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), *reh'g denied*, 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972).

An accused in a criminal proceeding who takes the stand is subject to the same kind of cross-examination as any other witness. *United States v. Jackson*, 344 F.2d 922 (6th Cir.1965), *cert. denied*, 382 U.S. 880, 86 S.Ct. 169, 15 L.Ed.2d 120 (1965). Such an accused waives his privilege against self-incrimination with respect to all matters reasonably related to the subject matter of his direct examination. *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958), *reh'g denied*, 356 U.S. 948, 78 S.Ct. 776, 2 L.Ed.2d 822 (1958); *Neely v. Israel*, 715 F.2d 1261, 1263 (7th Cir.1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *United States v. Green*, 757 F.2d 116, 120 (7th Cir.1985); Fed.R.Evid. Rule 611(b), 28 U.S.C.

Analogous to the defendant's theory at trial in the case *sub judice* the defendant in *United States v. Le Amous*, 754 F.2d 795 (8th Cir.1985), *cert. denied*, —— U.S. ——, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985), attempted to paint a picture of himself, on direct examination, as a protector of young girls who encouraged alternatives to prostitution. He had been charged with and convicted of transporting a minor across state lines for the purpose of prostitution in violation of 18 U.S.C. § 2423. The Eighth Circuit affirmed and held, relevant to the case *sub judice*, that by painting a picture of himself, on direct examination, as a protector of young girls who encouraged alternatives to prostitution, the defendant invited cross-examination concerning particular instances of his conduct to the contrary. *Id.*, at 798.

Similarly, in *United States v. Allston*, 613 F.2d 609 (5th Cir.1980) the defendant, under sentence for the murder of a fellow inmate, filed a motion to vacate his sentence on the ground that the government had improperly cross-examined him regarding his post arrest silence. The defendant attempted to create the impression, on direct examination, that he had cooperated fully in the government's investigation of the crime. The Fifth Circuit affirmed the conviction and held, relevant to the case *sub judice*: "[T]he district court was correct in ruling that the appellant had 'opened the door' to the cross-examination on the issue of his post arrest silence, and his motion was properly denied on this ground." *Id.*, at 611.

In *Allston* the defendant also complained of the government's use of his post arrest silence during closing argument. The Fifth Circuit analyzed the question under the plain error standard since Allston failed to object to the prosecutor's argument at trial. The court affirmed the trial court's conclusion of no plain error partly on the ground that the evidence of silence had already been properly admitted for impeachment purposes. *Id.*, at 611–612.

In *United States v. Hedman*, 630 F.2d 1184 (7th Cir.1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981), defendants who had been convicted of conspiracy to commit extortion and extortion under color of official right argued that they had been deprived of a fair trial on the basis of prosecutorial misconduct during the government's closing arguments. The Seventh Circuit affirmed the convictions and held, relevant to this assignment of error, that "[i]t is well settled that where defense counsel makes statements in closing arguments that invite the government to respond, the prosecutor may, on rebuttal, enter into areas that would otherwise constitute improper argument." *Id.*, at 1199 (citations omitted).

■ We believe that appellant's testimony at trial upon direct examination which attempted to paint a picture of him as a willing, cooperative grand jury witness effectively "opened the door" for the government to cross-examine Seltzer concerning the compelled nature of his grand jury testimony. Also, since such testimony had already been properly admitted and since appellant's counsel first referred to the grant of immunity during closing argu-

ments, we believe that there was no error in allowing the government to mention the compelled nature of Seltzer's testimony in an effort to dispel any vision of him as a cooperative witness. We believe the cross-examination and prosecutorial comment upon appellant's invocation before the grand jury of his fifth amendment privilege was not improper given the particular circumstances of this case.

**D.**

Appellant's final assignment of error may be readily disposed of pursuant to *Meeks v. Illinois Central Gulf R.R.,* 738 F.2d 748 (6th Cir.1984) wherein Judge Contie wrote, *citing Timmreck v. United States,* 577 F.2d 372, 376 n. 15 (6th Cir. 1978), *rev'd on other grounds,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), "that a panel of this court may not overrule a previous panel's decision. Only on (sic) en banc court may overrule a circuit precedent, absent an intervening Supreme Court decision." *Meeks v. Illinois Central Gulf R.R.,* 738 F.2d at 751. *See also Smith v. United States Postal Service,* 766 F.2d 205, 207 (6th Cir.1985).

■ With respect to this final issue there are two existing rulings of this Court which the trial court followed and which hold that "it has long been settled that the question of materiality in a perjury or false statement case is one of law for the courts to decide." *United States v. Giacalone,* 587 F.2d 5, 6 (6th Cir.1978), *cert. denied,* 442 U.S. 940, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). *See also United States v. Richardson,* 596 F.2d 157, 165 (6th Cir.1979). Contrary to the appellant's assertions there has been no intervening Supreme Court decision on this question. We are bound to follow *Richardson* and *Giacalone.*

**III.**

In conclusion, we believe: (1) the evidence presented in the trial court was legally sufficient to convict appellant of falsely testifying in 1983 that he had no present recollection of the 1976 wire transfer orders; (2) the use, both at trial and

before the indicting grand jury, of appellant's 1981 immunized testimony to indict and convict for an alleged 1983 perjury did not violate the fifth amendment or the immunity statute; (3) the trial court did not abuse its discretion in allowing cross-examination and prosecutorial comment upon appellant's invocation before the grand jury of his fifth amendment privilege; and, (4) appellant's constitutional right to a trial by jury was not violated when the court removed materiality from the jury's determination and instructed the jury that this element had been established as a matter of law.

For the reasons set forth above the judgment of the district court is AFFIRMED in all respects.