961 F.2d 1580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Henry J. RYMER, Defendant-Appellant.
 No. 91-5585.
 United States Court of Appeals, Sixth Circuit.
 April 27, 1992.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and TIMBERS, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction for making false declarations to a federal grand jury in violation of 18 U.S.C. § 1623. The defendant contends (1) that the evidence against him was insufficient to support the conviction, and (2) that the district court erred in allowing him to be subjected to cross-examination on the exercise before the grand jury of his Fifth Amendment right against self-incrimination. Finding neither argument persuasive, we shall affirm the conviction.
 
 
 2
 * The defendant, Henry J. Rymer, was employed in quality control positions by Harris Tube Pulling and Manufacturing, Inc., in Ooltewah, Tennessee. Harris Tube had a contract with the United States Army to manufacture mechanical housings for the cooling system of the M-2 Bradley fighting vehicle.
 
 
 3
 In the fall of 1989 the Office of the Inspector General of the Department of Defense investigated allegations that Harris Tube had committed fraud in the performance of its contract. It was alleged that glue had been improperly used to seal leaks around the access covers of the mechanical housings, that plastic aluminum filler had been used to conceal porosity defects in some of the castings, and that access covers had not been properly salt-spray tested.
 
 
 4
 Two federal agents interviewed Mr. Rymer in November of 1989 to determine if he had any information concerning these matters. He was asked if he had any knowledge concerning the porosity problems that had been experienced with the mechanical housings and if he had any knowledge concerning the type of filler that had been used to correct the problems. Mr. Rymer said that he had no such knowledge. The agent then told him that the allegations were serious ones, that they could lead to criminal prosecutions, and that he should be honest and tell the truth. Again Mr. Rymer said that he knew nothing.
 
 
 5
 Mr. Rymer was then shown a hardware store receipt for plastic aluminum filler. The receipt, which was dated July 20, 1989, bore Mr. Rymer's signature. On seeing the receipt, Mr. Rymer "gave an expression of surprise and concern, a worried look." He then admitted that the signature was his; that he had made the purchase; and that it was billed to Harris Tube's account. He explained that during his inspection of the mechanical housings he had noticed that approximately 40 of them had porosity problems; small holes and pits were located on the exterior and interior of the units. He said that he had brought the situation to the attention of the quality control manager, Chris Blenstroub, who then discussed the problem with the president of the company. Either Mr. Blenstroub or the production supervisor, Fred Hollingsworth, instructed him to buy the plastic aluminum filler, Mr. Rymer told the agents. After he had made the purchase, Rymer and Hollingsworth applied the filler to the housing units that had porosity problems. In subsequent inspections Rymer noticed that the filler had been applied to other non-conforming housings by the employees in the production department. Rymer admitted to the agents that he thought this procedure, which had not been disclosed to the government, was deceitful.
 
 
 6
 With respect to the allegations of improper use of glue, Mr. Rymer told the investigators that he had purchased Super Glue from the hardware store and applied it to the gaskets around the housing access covers in order to prevent leakage. He admitted that this procedure too was not disclosed to the government and was deceptive. He also admitted that none of the covers had been salt-spray tested.
 
 
 7
 The agents interviewed Mr. Rymer again in January of 1990. Again he told the agents about the use of the filler and glue and the failure to subject the covers to salt-spray testing. He also mentioned an occasion on which production supervisor Hollingsworth had asked him if the government's quality control inspector was aware of the application of the glue. When Mr. Rymer said that he did not think so, Hollingsworth replied, "Good. It needs to stay that way."
 
 
 8
 On August 15, 1990, Mr. Rymer was subpoenaed to appear before a federal grand jury in Chattanooga, Tennessee. The grand jury was investigating possible fraud against the government by Harris Tube. Before he testified, Mr. Rymer swore under penalty of perjury to tell the truth. He was then advised of his rights and asked if he had consulted an attorney. He replied that he had talked to the attorney representing Harris Tube. An assistant U.S. Attorney then proceeded to question him, evoking testimony that did not seem to be very forthcoming; this led to a series of questions concerning the statements he had made to the agents. Mr. Rymer repeatedly declared that he could not remember the statements he had made during the two interviews.
 
 
 9
 Mr. Rymer was subsequently indicted on one count of knowingly making false declarations before the grand jury in violation of 18 U.S.C. § 1623. The indictment charged that Mr. Rymer had given false testimony when he stated that he could not recall telling the agents that he had noticed approximately 40 housings that were nonconforming due to porosity problems, could not specifically recall discussing the mechanical housings contract, and could not recall the Hollingsworth incident.
 
 
 10
 Mr. Rymer took the stand in his own defense at trial. On direct and on cross-examination he indicated that he had been a cooperative witness for the government and that he was willing to testify against Harris Tube. Pursuant to United States v. Seltzer, 794 F.2d 1114 (6th Cir.1986), cert. denied, 479 U.S. 1054 (1987), the government moved for permission to cross-examine Rymer on his invocation before the grand jury of the Fifth Amendment privilege against self-incrimination. The district court granted the government's request, and the invocation of the privilege was used to show that Mr. Rymer had not in fact been a cooperative witness.
 
 
 11
 The jury ultimately found Mr. Rymer guilty, and he was sentenced to a year's imprisonment. This appeal followed.
 
 II
 
 12
 When reviewing the sufficiency of evidence, this court does not sit as a trier of fact. Our only role is to determine "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 474 U.S. 1017 (1986), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 
 13
 The statute under which Mr. Rymer was charged, 18 U.S.C. § 1623, provides that, "[w]hoever under oath ... in any proceeding before ... [a] grand jury of the United States knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned not more than five years or both."
 
 
 14
 Mr. Rymer argues that the testimony he gave before the grand jury was the literal truth. In Bronston v. United States, 409 U.S. 352 (1973), the Supreme Court reversed a defendant's perjury conviction after it determined that his answers were non-responsive but literally true. Rymer contends that Bronston governs this case and requires that the conviction be reversed. We disagree.
 
 
 15
 Mr. Rymer's answers were not non-responsive, and the issue is whether a rational jury could have found that he was lying when he testified that he could not remember what he had told the federal agents during their investigation. We conclude that there was sufficient evidence from which a rational jury could have made such a finding. The court reporter who was present at the grand jury proceeding testified that Mr. Rymer hesitated and appeared evasive when he responded to the government's questions. There was also testimony from Mr. Blenstroub to the effect that Mr. Rymer was extremely upset about what was going on at Harris Tube and wanted to quit his employment there. The jury could have reasoned that the activities at Harris Tube were so important to Mr. Rymer that he was not likely to forget what he had said about them. In addition, the jury could have found that his disclaimer of any recollection of his account of Mr. Hollingsworth's comment was untruthful, given that Mr. Rymer had been the one who had brought the incident to the agents' attention in the first place.
 
 
 16
 Mr. Rymer next argues that even if his responses were false, they were not material. "[A] false declaration satisfies the materiality requirement if a truthful statement might have assisted or influenced the grand jury in its investigations." United States v. Swift, 809 F.2d 320, 324 (6th Cir.1987). Mr. Rymer possessed first-hand knowledge about the fraud that had occurred at Harris Tube, and the questions that were asked of him bore a close relation to that knowledge. It seems clear that if Mr. Rymer had testified truthfully, his testimony would have been helpful to the grand jury.
 
 III
 
 17
 We turn next to the propriety of the disclosure of Mr. Rymer's invocation of the Fifth Amendment. The key precedent on that issue is United States v. Seltzer, 794 F.2d 1114 (6th Cir.1986), cert. denied, 479 U.S. 1054 (1987). In Seltzer, the defendant appeared before the grand jury, invoked his Fifth Amendment privilege to remain silent, and later testified under a grant of immunity. Some of the testimony he gave was false, and he was subsequently brought to trial for perjury under 18 U.S.C. § 1623. At his trial, he portrayed himself as a cooperative grand jury witness who had no reason to lie. On cross-examination he refused to acknowledge that he had been an uncooperative witness. With the permission of the district court, the government then brought out the fact that he had invoked his Fifth Amendment privilege. The defendant was convicted and he appealed. On review, this court held that the defendant's "testimony at trial upon direct examination which attempted to paint a picture of him as a willing, cooperative grand jury witness effectively 'opened the door' for the government to cross-examine [him] concerning the compelled nature of his grand jury testimony." Id at 1122.
 
 
 18
 The case at bar presents the same type of situation. On direct examination, Mr. Rymer testified that he would have assisted the government by willingly testifying against Harris Tube. On cross-examination also he declared that he had been a cooperative witness. It was only after this testimony that the government moved for permission to show Rymer's use of the Fifth Amendment. Under Seltzer, the granting of the government's request was not improper.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable William H. Timbers, Senior Circuit Judge for the Second Circuit, sitting by designation