16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles L. BOBBITT, Defendant-Appellant.
 No. 92-6445.
 United States Court of Appeals, Sixth Circuit.
 Jan. 21, 1994.
 
 Before: BOGGS and NORRIS, Circuit Judges; and CLELAND, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Bobbitt challenges his conviction for making a false declaration before the grand jury. For the reasons stated herein, the conviction is affirmed.
 
 I. INTRODUCTION
 
 2
 The appellant/defendant, Charles L. Bobbitt, owned a commercial building in Georgia. One of his tenants was H & H Furniture Company, owned by Arthur Harriss. According to the indictment, defendant and another man (William Joseph Nelson) conspired to defraud an insurance company by committing arson in order to obtain insurance proceeds. Defendant and Nelson were charged with several substantive mail fraud violations. In addition, defendant was charged in count eleven (11) with making a false declaration to the grand jury. The jury found defendant not guilty on all counts with the exception of count eleven. Based on this finding, the district judge sentenced defendant to serve thirteen months in prison and pay $29,496, which included $19,446 for the "cost of imprisonment." Defendant filed a motion for a new trial alleging that the district court erred in assessing costs for imprisonment because, he argued, U.S.S.G. Sec. 5E1.2(i) (which specifically allows such costs to be assessed), was invalid. Subsequently, the district court issued an order amending its judgment to delete any reference to cost of imprisonment. The total fine assessed, however, remained at $29,496.
 
 II. BACKGROUND
 
 3
 The fire which was the basis for the indictment occurred on March 19, 1987. On November 1, 1991, defendant testified before a federal grand jury investigating the fire. During his grand jury appearance, he was asked the following questions and gave the following answers, the emphasized portions of which were alleged in the indictment to have been false:
 
 
 4
 Q. Did you have a key to the, you had a key to the building so you could get in?
 
 A. Yeah
 
 5
 Q. Could you get in to H & H Furniture if you wanted to and that kind of thing?
 
 
 6
 A. No, I didn't have a key to them.
 
 
 7
 Q. You didn't have a key to the first floor?
 
 
 8
 A. I didn't have a key to get in their store.
 
 
 9
 At trial, Arthur Harriss testified that he leased the store at the time of the fire. He testified that there was a front door and a back door to the store and that the same key fit both doors. He also testified that he obtained the key from his brother, Don Harriss, who leased the store previously. Arthur Harriss testified that he personally saw defendant give the key to his brother Don Harriss. This same key opened the front and back doors at the time of the fire. Arthur Harriss stated further that the locks had not been changed by either him or his brother. Arthur Harriss' brother, Don Harriss, confirmed that he received his key from defendant when he leased the building. Don Harriss testified on direct as follows:
 
 
 10
 Q. Now, when you had the keys to get in, were there occasions when you were going to meet Mr. Bobbitt (defendant) over there and he was already in the store?
 
 
 11
 A. It was one occasion that I was supposed to meet him over there. I went over there to do some cleaning, he was in there already moving some items.
 
 
 12
 Q. Did Mr. Bobbitt have access to your store, then?
 
 
 13
 A. Evidently he did. He was inside.
 
 
 14
 On cross examination, Don Harriss admitted that he could not remember exactly when it was that this incident occurred. However, he further stated on cross that during the first part of his lease "there were several other occasions, there wasn't just one occasion that [defendant] was there, there was [sic] several occasions over a period of a month or six weeks or whatever it was." Two issues are before this court on appeal: 1) whether sufficient evidence supports the jury's verdict and 2) whether the district court's judgment, as amended, was a correct application of the United States Sentencing Guidelines.
 
 III. DISCUSSION
 SUFFICIENCY OF THE EVIDENCE
 
 15
 Defendant contends that there was not sufficient evidence to support his conviction for false declaration in violation of 18 U.S.C. Sec. 1623 (1984 & Supp.1993). The essential elements of a violation of 18 U.S.C. Sec. 1623(a) are:
 
 
 16
 (1) That the defendant knowingly made a false declaration while under oath before a grand jury; and
 
 
 17
 (2) That the false declaration was material.
 
 
 18
 In reviewing the sufficiency of the evidence, this court applies the same legal standard as the district court. United States v. Beddow, 957 F.2d 1330 (6th Cir.1992):
 
 
 19
 Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This court "will reverse a judgment for insufficiency of evidence only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial." United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984). It is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt. [United States v.] Adamo, 742 F.2d [927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985) ].
 
 
 20
 Beddow, 957 F.2d at 1334.
 
 
 21
 Defendant contests all three relevant aspects of the statute. Specifically, defendant argues that: (1) there was insufficient evidence of falsity, (2) that, even if his statements to the grand jury were false, there was insufficient evidence to show that he knew of the falsity, and (3) that his statements, even if knowingly false, were not material.
 
 FALSITY
 
 22
 Defendant maintains that there is no evidence which shows that the statements of Don Harriss were inconsistent with the statements he gave to the grand jury. In support of this argument defendant states that, "[t]here exists [sic] many plausible explanations which allow both Don Harriss' trial testimony and the defendant's grand jury testimony to coincide without either being untrue." He contends that a multitude of reasonable inferences can be drawn from the government's witness without any inference of perjury on his part, and he may well be correct. For example, defendant states that there was no testimony by the government to show either that the door that he entered was indeed locked or that he was the only one in the store when Don Harriss arrived. As stated above, it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt. Beddow, 957 F.2d at 1334. Taken in the light most favorable to the government, a rational jury could find defendant's statement to the grand jury (i.e. that he did not have a key to the store) to be inconsistent with Don Harriss' testimony that defendant evidently had "access" to his store because, upon arrival there on one occasion, he (Harriss) found defendant "already there." A rational jury could reasonably equate "having access" to a furniture store--which presumably contained inventory, receipts, and cash--with having a "key" to the store.[1]
 
 FALSE STATEMENT KNOWINGLY MADE
 
 23
 Defendant further alleges that, even if a rational jury could have found falsity, at the time of his grand jury testimony he did not have the requisite "knowledge" that his statements were untrue. It is well settled that, even though "direct evidence on state of mind is impossible to produce, circumstantial evidence is useful and competent for this purpose." Pitts v. United States, 763 F.2d 197, 201 n. 6 (6th Cir.1985). Defendant's argument hinges on the considerable time gap (approximately nine years) that occurred between the time Don Harriss remembered having seen defendant inside the store and the time of defendant's grand jury testimony. Defendant maintains that "whether Mr. Harriss observed defendant inside H & H Furniture Store after he had leased the store, but before he was given the keys or shortly thereafter[,] is too remote a question." Defendant relies on United States v. Seltzer, 794 F.2d 1114, 1119 (6th Cir.1986), cert. denied, 479 U.S. 1054 (1987), where the court held that:
 
 
 24
 [T]aken together and viewed in the light most favorable to the government, the undisputed evidence of other direct falsehoods and perjury, the particular complex and unusual nature of the events appellant claims he does not recall, the incredible nature of his testimony, appellant's evasive and deceptive answers, and his uncooperativeness constitute such relevant evidence as could be accepted by a reasonably-minded jury as adequate and sufficient to support a conclusion of appellant's guilt beyond a reasonable doubt.
 
 
 25
 Seltzer does not stand for the proposition that transactions must be "complex" and "unusual" before a witness can be deemed to have remembered them. In Seltzer, the salient issue was whether there was sufficient evidence to convict the defendant of falsely testifying in 1983 that he had no present recollection of 1976 wire transfer orders. In contrast, defendant in the instant case unequivocally testified that he did not have a key to the H & H Furniture Store. There is, qualitatively, a significant distinction between testimony by a witness that he does not recall an event and testimony that the event in question never occurred. It is obvious that it is more difficult to prove that the former statement (which calls into question the source's subjective memory of whether or not an event occurred), rather than the latter statement (which merely puts at issue the veracity of the source's statement that a particular event never transpired) was a "knowing" falsehood when made.
 
 
 26
 In the instant case, Don Harriss testified that defendant apparently had "access" to his store because on at least one occasion when he (Don Harriss) was supposed to meet defendant at the store, he found defendant "in there already." In order to overturn his conviction based on this element, the court would have to assume that defendant had somehow forgotten that he retained a key to the store. Other than the lag in time between when Don Harriss moved into the store and defendant's testimony, defendant proffers no evidence to indicate that a reasonable jury would be required to have made such a finding. We believe that the "fact" (as determined by the jury) that defendant himself, sometime after 1982, had entered the closed store, apparently equipped with a key but not accompanied by a store proprietor, is sufficient evidence from which a jury could find that defendant "knew" he was falsely testifying to the grand jury in November, 1991, when he stated that he did not have a key to the store.
 
 MATERIALITY
 
 27
 Lastly, defendant argues that the statements made by him to the grand jury were not material. Defendant maintains that the jury's verdict (acquittal on all counts except false declaration to the grand jury) is evidence that the statements made were not material. The statements at issue, however, were made to the grand (and not the petit) jury. Thus, the factual inquiry demanded is whether or not the statements were material to the grand jury's investigation. This is a question of law for the court. United States v. Seltzer, 794 F.2d 1114, 1123 (6th Cir.1986). It is absurd to suggest that the statement regarding whether defendant had access to the furniture store was not "material" to the grand jury's investigation of the fire. The grand jury was investigating an arson, the ignition source of which emanated from the furniture store. Whether the beneficiary of a fire insurance policy had pre-fire access to the eventual site of a fire was certainly "material" to the grand jury's investigation.
 
 APPLICATION OF SENTENCING GUIDELINES
 
 28
 Defendant contends that the district court erred by deleting the language concerning "costs of imprisonment" from its judgment rather than subtracting the costs originally assessed from the total fine. In other words, defendant argues that the district court's judgment, as amended, was not a correct application of the United States Sentencing Guidelines.
 
 
 29
 It is undisputed that defendant's imprisonment guidelines range was from 10 to 16 months and his fine range from $3,000-$30,000. After his conviction, defendant was sentenced to thirteen months of imprisonment and fined $29,496.00. The judgment fine specifically included "the cost of imprisonment of $19,446, and an additional fine of $10,000...."[2] Subsequently, on May 11, 1993, defendant filed a motion for a new trial in which he argued that the "Sentencing Reform Act ... does not authorize the assessment of fines to recoup to the government the cost of incarcerating defendants." In support of his motion, defendant relied on United States v. Spiropoulos, 976 F.2d 155 (3d Cir.1992), where the court was faced with a case where the district court had levied a fine at the high end of the guideline range and, in addition, imposed a fine pursuant to U.S.S.G. Sec. 5E1.2(i) reflecting the costs of incarceration. The Third Circuit determined that U.S.S.G. Sec. 5E1.2(i) was invalid. The court's rationale was that the purpose of U.S.S.G. Sec. 5E1.2(i) (i.e. to assess a fine to pay for the costs of imprisonment) was inconsistent with the Sentencing Reform Act. Cf. United States v. Hagmann, 950 F.2d 175, 186-87 (5th Cir.1991), cert. denied, 113 S.Ct. 108 (holding that there was a sufficient relationship between the cost of imprisonment and the harm a defendant causes to society to satisfy the rationality requirement of the Due Process Clause).
 
 
 30
 The district court in the instant case construed defendant's motion for a new trial as a motion to correct a sentence that was imposed as a result of arithmetical, technical, or other clear error under Fed.R.Crim.P. 35(c). The court noted that the instant case was distinguishable from Spiropoulos, where the cost of imprisonment fine was imposed in addition to the guideline range fine. In the instant case, unlike in Spiropoulos, defendant's total fine was within the guideline range. Therefore, the court determined, "it is not necessary in this case to take either of the competing views of U.S.S.G. Sec. 5E1.2(i)." Nevertheless, to avoid any question as to whether any portion of the fine--even a guideline range fine--can be grounded upon 'cost of imprisonment,' the district court amended the judgment to eliminate any reference to same.
 
 
 31
 Defendant concedes that, in light of the action taken by the district court, his argument now questions the severity of the fine rather than the 'cost of imprisonment' aspect of the fine. He nevertheless argues that the fine should be amended because "there exists no justification for the maximum fine to be imposed on [him]." The law is well settled that if a sentence is within the applicable guideline range and was neither imposed in violation of law nor as a result of an incorrect application of the sentencing guidelines, then the district court's sentence must be affirmed. See 18 U.S.C. Sec. 3742(f)(3); see also Williams v. United States, 112 S.Ct. 1112, 1121 (1992) ("The selection of the appropriate sentence from within the guideline range, as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court."). Because the fine is within the guideline range (and the defendant does not allege that the guidelines were incorrectly calculated), the district court's amended judgment must be affirmed pursuant to 18 U.S.C. Sec. 3742(f)(3).
 
 IV. CONCLUSION
 
 32
 For the aforementioned reasons, the conviction and sentence are affirmed.
 
 
 
 *
 Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 It should be noted further that on cross examination the following colloquy took place between the defense attorney and Don Harriss:
 Q. Okay. Other than that one occasion, did you ever see Mr. Bobbitt over there at any time you weren't there?
 A. Well, there were several occasions, there wasn't just one occasion that he was there, there was [sic] several occasions over a period of a month or six weeks or whatever it was.
 Although it is possible that Don Harriss was referring to a time period before he moved in (and thus before defendant had given him the key to the store), a rational jury could have inferred that, in answering the above question during cross-examination, he was expounding on the "one occasion" that he had previously discussed on direct. In that prior dialogue, Mr. Harriss was referring to a particular instance where he discovered defendant inside the store at a point in time after defendant had given him the keys:
 Q. Now, when you had the keys to get in, were there occasions when you were going to meet Mr. Bobbitt over there and he was already in the store?
 A. It was one occasion that I was supposed to meet him over there. I went over there to do some cleaning, he was there already moving some items.
 
 
 [2]
 Section 5E1.2(i) of the United States Sentencing Guidelines provides that:
 Notwithstanding of the provisions of subsection (c) of this section, but subject to the provisions of subsection (f) herein, the court shall impose an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered.